DEPARTMENT OF ENVIRONMENTAL QUALITY v
WORTH TOWNSHIP

Docket No. 289724. Submitted March 9, 2010, at Lansing. Decided
August 17, 2010, at 9:00 a.m.

The Department of Environmental Quality and the Director of the
Department of Environmental Quality brought an action seeking
injunctive relief in the Ingham Circuit Court against Worth
Township. Plaintiffs alleged that defendant lacked a sanitary-
sewerage system; that defendant relied on private septic systems;
that many of those septic systems were failing; and that as a result
of the failed septic systems, sewage with high levels of fecal
coliform and *E. coli* bacteria was being discharged into the waters
of the state, including Lake Huron. Plaintiffs claimed that defen-
dant was responsible for the discharges under part 31 of the
Natural Resources and Environmental Protection Act, MCL
324.3101 *et seq.*, and asked the court to require defendant to
construct a sanitary-sewerage system. Defendant moved for sum-
mary disposition under MCR 2.116(C)(8) and (10). The court,
Joyce Draganchuk, J., denied the motion. Defendant sought inter-
locutory leave to appeal. The Court of Appeals denied the applica-
tion in an unpublished order, entered July 2, 2008 (Docket No.
282183). The parties subsequently filed cross-motions for sum-
mary disposition under MCR 2.116(C)(10). The circuit court
granted plaintiffs' motion for summary disposition and denied
defendant's motion for summary disposition. The circuit court
ordered defendant to take corrective action to cease the discharges
and set forth a time frame for defendant to design and construct
the project that defendant selected for the corrective action.
Defendant appealed.

The Court of Appeals *held*:

MCL 324.3109(2) does not impose liability on a municipality for
any unauthorized discharge that occurs within its jurisdiction, but
merely creates a rebuttable presumption that the municipality was
the source of the discharge. The statute imposes responsibility on
the municipality when the municipality's actions lead to the
discharge. In this case, defendant rebutted the presumption by

establishing that it could not have been the source of the discharge because it did not operate a sanitary-sewerage system.

Reversed and remanded for entry of a summary disposition order in favor of defendant.

O'CONNELL, J., dissenting, stated that he would affirm the decision of the circuit court. Townships have historically been entrusted to oversee the proper disposal of sewage within their boundaries, and MCL 324.3109(2) continues to hold townships responsible for the unauthorized discharge of raw human sewage into state waters. If the majority's interpretation were correct, MCL 324.3109(2) would be unnecessary in light of MCL 324.3109(1), which separately prohibits a municipality from directly or indirectly discharging raw human sewage into the waters of this state. MCL 324.3109(2) applies in this case because the discharge occurred as a result of defendant's failure to construct a sanitary-sewerage system.

ENVIRONMENT — WATER POLLUTION — MUNICIPAL CORPORATIONS — DISCHARGES OF RAW HUMAN SEWAGE — REBUTTABLE PRESUMPTIONS — SOURCES OF A DISCHARGE.

The unauthorized discharge of raw human sewage into the waters of this state creates a rebuttable presumption that the municipality in which the discharge originated was the source of the discharge; the presumption is rebutted by evidence that the discharge did not occur through the agency of the municipality or as a result of the municipality that is, that no action of the municipality led to the discharge (MCL 324.3109[2]).

*Michael A. Cox*, Attorney General, *B. Eric Restuccia*, Solicitor General, and *Alan F. Hoffman*, Assistant Attorney General, for the Department of Environmental Quality and the Director of the Department of Environmental Quality.

*The Hubbard Law Firm, P.C.* (by *Michael G. Woodworth*), for Worth Township.

Amici Curiae:

*The Hubbard Law Firm, P.C.* (by *Mark T. Koerner* and *Peter A. Teholiz*), for Citizens Voice for Property Owners, Inc.

*Bauckham, Sparks, Lohrstorfer, Thall & Seeber, P.C.* (by *John H. Bauckham*), for the Michigan Townships Association.

Before: OWENS, P.J., and SAWYER and O'CONNELL, JJ.

SAWYER, J. In this case, we are asked to determine whether Michigan's Natural Resources and Environmental Protection Act (NREPA)[1] empowers the Department of Environmental Quality to require a township to install a sanitary-sewerage system when there is a widespread failure of private septic systems resulting in contamination of lake waters. We hold that it does not.

Defendant is a common-law township in Sanilac County along the shores of Lake Huron. It does not operate a public sanitary-sewerage system. All the residences and businesses within the township rely on private septic systems for waste disposal. A problem has developed with a number of those private septic systems located on a strip of land approximately five miles long that is between highway M-25 and Lake Huron. Some of these septic systems are failing, resulting in effluent being discharged into Lake Huron and its tributaries. For the past several years, plaintiff DEQ, as well as the county health department, has been pushing for defendant to install a public sanitary-sewerage system. Defendant has declined to do so, concluding that such a project would not be financially feasible.

Defendant's refusal to pursue a sanitary-sewerage project has resulted in the instant litigation to force it to do so. The parties pursued cross-motions for summary disposition, resulting in an order of the circuit court granting summary disposition to plaintiffs, establishing a time frame for defendant to design, begin construc-

---

[1] MCL 324.101 *et seq.*

tion on, and begin operating a sewerage system intended to remedy the failing septic systems and resulting discharges.[2] The order also imposed a $60,000 fine and awarded attorney fees. Defendant appeals this order and we reverse. .

The resolution of this case rests on the proper interpretation and application of MCL 324.3109(2) and MCL 324.3115. Like a motion for summary disposition, we review a question of statutory interpretation de novo. *Bush v Shabahang*, 484 Mich 156, 164; 772 NW2d 272 (2009). Plaintiffs depend on the first statute to establish defendant's responsibility for the discharge from the private septic systems into the waters of Lake Huron and then rely on MCL 324.3115 for the remedy of requiring defendant to install and operate a public sanitary-sewerage system. We are not persuaded that MCL 324.3109(2) imposes the responsibility on defendant that plaintiffs suggest it does.

MCL 324.3109 provides in pertinent part as follows:

> (2) The discharge of any raw sewage of human origin, directly or indirectly, into any of the waters of the state shall be considered prima facie evidence of a violation of this part by the municipality in which the discharge originated unless the discharge is permitted by an order or

---

[2] Technically speaking, the circuit court's order does not specifically compel the construction of a sanitary-sewerage system. Rather, it refers to defendant's obligation "to take necessary corrective action" and then establishes a time frame for that action. The time frame refers to a deadline for defendant to submit for the DEQ's approval a "proposed service area," as well as deadlines for the design, approval by the DEQ, construction, and the beginning of operations of "the project." But, in light of plaintiffs' explicit statement that they view as the only practical option the construction of a municipal-sewerage system, it seems rather apparent that "the project" is a sanitary-sewerage system constructed and operated by defendant. In any event, as discussed later in this opinion, we conclude that no statutory authority grants plaintiffs the power to determine the appropriate remedy.

rule of the department. If the discharge is not the subject of a valid permit issued by the department, a municipality responsible for the discharge may be subject to the remedies provided in section 3115. If the discharge is the subject of a valid permit issued by the department pursuant to section 3112, and is in violation of that permit, a municipality responsible for the discharge is subject to the penalties prescribed in section 3115.

(3) Notwithstanding subsection (2), a municipality is not responsible or subject to the remedies provided in section 3115 for an unauthorized discharge from a sewerage system as defined in section 4101 that is permitted under this part and owned by a party other than the municipality, unless the municipality has accepted responsibility in writing for the sewerage system and, with respect to the civil fine and penalty under section 3115, the municipality has been notified in writing by the department of its responsibility for the sewerage system.

Defendant argues that MCL 324.3109 does not impose responsibility on a municipality for any discharge that occurs within its jurisdiction, but merely creates a rebuttable presumption that the municipality was the source of the discharge. We agree.

First, we must look to the meaning of "prima facie evidence." Because this is a legal term not defined by the statute, we may consult a legal dictionary.[3] Black's Law Dictionary (5th ed), defines "prima facie evidence" as follows:

Evidence good and sufficient on its face; such evidence as, in the judgment of the law, is sufficient to establish a given fact, or the group or chain of facts constituting the party's claim or defense, and which if not rebutted or contradicted, will remain sufficient. Prima facie evidence is evidence which, if unexplained or uncontradicted, is sufficient to sustain a judgment in favor of the issue which it supports, but which may be contradicted by other evidence.

[3] *Nuculovic v Hill*, 287 Mich App 58, 67; 783 NW2d 124 (2010).

> Prima facie evidence is evidence that, until its effect is overcome by other evidence, will suffice as proof of fact in issue; "prima facie case" is one that will entitle party to recover if no evidence to contrary is offered by opposite party. Evidence which suffices for the proof of a particular fact until contradicted and overcome by other evidence. Evidence which, standing alone and unexplained, would maintain the proposition and warrant the conclusion to support which it is introduced. An inference or presumption of law, affirmative or negative of a fact, in the absence of proof, or until proof can be obtained or produced to overcome the inference. [Citations omitted.]

This definition makes it abundantly clear that prima facie evidence is rebuttable. Thus, MCL 324.3109(2) clearly does not make a municipality automatically and conclusively responsible for a discharge of raw sewage. Rather, it merely creates the presumption that the municipality is responsible until and unless the municipality is able to establish that it did not violate part 31 of NREPA, MCL 324.3101 *et seq.*, which deals with the protection of water resources. Defendant advances a particularly compelling argument that it is not the source of the violation: it does not operate a sanitary-sewerage system that could be the source of the discharge.

Second, we look to the meaning of the phrase "by the municipality." This phrase is key because it answers plaintiffs' contention that MCL 324.3109(2) imposes responsibility for a discharge on a municipality without regard to the source of the discharge. That is, plaintiffs argue that any discharge of raw sewage within a municipality constitutes prima facie evidence of a violation by the municipality even if the municipality is not the source of the discharge. We disagree. The word "by" has many meanings. For its meaning as a nonlegal term, we look to a layman's dictionary rather than a legal one. *Horace v City of Pontiac*, 456 Mich 744, 756; 575 NW2d 762 (1998). We find these definitions from the *Random*

*House Webster's College Dictionary* (1997) to be particularly helpful: "10. through the agency of" and "12. as a result or on the basis of[.]" Thus, MCL 324.3109(2) imposes responsibility on the municipality not when the violation merely occurs within the boundaries of the municipality, but when the violation occurs "through the agency of" the municipality or "as a result" of the municipality, that is to say, when it is the actions of the municipality that lead to the discharge.

The argument that the municipality must actually cause the discharge is further buttressed by a third factor. MCL 324.3109(3) explicitly states that a municipality is not responsible for a discharge from a sewerage system that is not operated by the municipality unless the municipality has accepted responsibility in writing for the sewerage system. If the purpose of subsection (2) were to impose liability on a municipality merely because a discharge occurred within its boundaries, then subsection (3) would be contradictory.

Indeed, an argument advanced by plaintiffs in an issue that we need not reach, whether the state is obligated to fund the sewerage system under the Headlee Amendment[4] if defendant is compelled to construct one, further reinforces this argument. Plaintiffs argue that the obligation of a township to install a sanitary-sewerage system predates the Headlee Amendment and, therefore, does not constitute a new local obligation that the Headlee Amendment compels the state to fund. In making this argument, plaintiffs look to the former statute, MCL 323.6, which stated in pertinent part that any

city, village or township which permits, allows or suffers the discharge of such raw sewage of human origin into any

---

[4] See Const 1963, art 9, §§ 25 and 29.

of the waters of the state by any of its inhabitants or persons occupying lands from which said raw sewage originates, shall be subject only to the remedies provided for in [MCL 323.7].

Assuming for the sake of argument that such a remedy included the compulsory installation of a sanitary-sewerage system,[5] while it would perhaps save the state from being obligated to fund a sewerage system in Worth Township if the current statute were to continue to impose such an obligation, it only serves to underscore that no such obligation exists. While part 31 of NREPA parallels the former act in many respects, there are some very noticeable differences. First, while former MCL 323.6(b) specifically referred to a "city, village or township," current MCL 324.3109 refers more generally to "municipality," a word that, as will be discussed later in this opinion, carries a much broader definition. But even more importantly, while former MCL 323.6(b) specifically addressed the issue of a city, village, or township that allowed a discharge to occur by any of its inhabitants, there is no such language in the current statute that links responsibility for the actions of an inhabitant to a particular governmental body. It is a basic rule of statutory construction that a change in the use of words by the Legislature is intentional and reflects a similar change in meaning.[6] So if, as plaintiffs

---

[5] Given the lack of any clear mandate in former MCL 323.7 of such a remedy, this would seem to be a great assumption indeed, particularly in light of the failure of past panels of this Court to find any such obligation. See, e.g., *McSwain v Redford Twp*, 173 Mich App 492, 499-500; 434 NW2d 171 (1988) (stating that "we do not believe defendant was required by statute to install a sanitary sewer system under the instant circumstances"); *Ahearn v Bloomfield Charter Twp*, 235 Mich App 486, 494-495; 597 NW2d 858 (1999) (concluding that just because a township has provided sanitary sewer service does not mean that it is under a continuing duty to do so).

[6] *Bush,* 484 Mich at 167.

argue, the old statute did impose an obligation on a township to install a sanitary-sewerage system in response to an inhabitant discharging sewage, then it follows that the change in wording of the statute reflects an intent by the Legislature to remove such an obligation.[7]

For these reasons, we agree with defendant's interpretation of subsection (2). When an unauthorized discharge occurs, the presumption arises that the municipality within whose boundaries the event occurs is responsible for the violation unless the municipality can establish that the discharge did not occur as the result of actions by the municipality. When, as here, the municipality could not have been the source of the discharge because it did not operate a sanitary-sewerage system, it has overcome that presumption and is not subject to the statutory remedies for a discharge.

In any event, even if we were to agree with plaintiffs that MCL 324.3109(2) creates a responsibility by a municipality for an unauthorized discharge of raw sewage and the municipality is thus subject to the remedies of § 3115, plaintiffs face another hurdle: the definition of "municipality." For purposes of part 31 of NREPA, MCL 324.3101(m) supplies a particular definition of "municipality": "this state, a county, city, village, or township, or an agency or instrumentality of any of these entities." Thus, the state is as much a municipality as is defendant. And, by extension, the state bears as

---

[7] Indeed, plaintiffs' argument in this respect places them in a logical corner. If the prior statute did impose a duty on a township to install a sanitary-sewerage system in these circumstances, then the change in statutory language of necessity did away with that duty. But if no such duty existed under the previous statute and the current statute does impose one, then the Headlee Amendment obligates the state, of which the DEQ is an agency, to provide the funding in order for plaintiffs to compel defendant to install such a system.

much responsibility for the unauthorized discharges at issue in this case as does defendant. And the state is as liable to the remedies of § 3115 as is defendant. Thus, even if we were to agree with plaintiffs that MCL 324.3109(2) imposes on a "municipality" the responsibility of installing a sanitary-sewerage system to abate a problem with the discharge of raw sewage, plaintiffs offer no compelling reason why they should be permitted to shift their own responsibility to install a sanitary sewer onto defendant. Or, to put it another way, if plaintiffs are entitled to prevail in this action, then we see no reason why defendant could not counterclaim against plaintiffs and prevail in a claim seeking to require plaintiffs install the sewerage system.

Indeed, if the purpose of § 3109(2) is to impose responsibility on a governmental unit, it would seem that the legislative intent would be to make the DEQ the primary responsible agency because the Legislature had available to it the use of a term that did not include the state, namely "local unit." MCL 324.3101(*l*), defines "local unit" to mean "a county, city, village, or township or an agency or instrumentality of any of these entities." The only difference between the definition of "local unit" and "municipality" in § 3101 is the inclusion of the phrase "this state" in the definition of "municipality" and not in the definition of "local unit." The Legislature's choice of "municipality" rather than "local unit" in § 3109(2) must have been intentional,[8] and it must have been for the purpose of imposing liability on the state as well as a local unit.

But the more logical explanation is that § 3109(2) simply is not designed to establish responsibility for a discharge without causation. If the Legislature intended to, as plaintiffs suggest, impose responsibility on

---

[8] See *Bush,* 484 Mich at 167.

a governmental unit when an inhabitant causes a discharge, why would it use a term that would simultaneously impose such responsibility on three or four units of government[9] without any clear mandate about which of those units had primary responsibility? But if we interpret the statute as suggested by defendant, then the statute creates the presumption that each of those units of government is the cause of the discharge and each avoids responsibility when it establishes that it was not the source of the discharge.

In sum, we hold that MCL 324.3109(2) does not impose blanket responsibility on a municipality for any sewage discharge that occurs within its jurisdiction and a corresponding obligation to remedy such discharges without regard to cause. Rather, it merely creates the presumption that such a discharge originated with the municipality. But when, as here, the municipality, defendant in this case, cannot have been the cause of the discharge, it holds no responsibility for the discharge. And, therefore, there is no basis to impose on defendant the obligation to pursue the remedy desired by plaintiffs, the installation of a public sanitary-sewerage system. The trial court should have granted summary disposition to defendant, not to plaintiffs.

In light of our resolution of this issue, we need not address the remaining issues raised by defendant.

The order of the circuit court granting summary disposition to plaintiffs is reversed. The matter is remanded to the circuit court with instructions to enter an order of summary disposition in favor of defendant. We do not retain jurisdiction. Defendant may tax costs.

OWENS, P.J., concurred.

_____

[9] Under the term "municipality," the state and the county would always be responsible, as well as the city, village, or township.

O'CONNELL, J. (*dissenting*).

I would affirm the well-reasoned decision of the learned trial judge.

## I. FACTS

Defendant Worth Township is located in Sanilac County along the western shore of Lake Huron. Because of its proximity to Lake Huron, the township has long been a haven for vacationers. Years ago, significant portions of the land in the township were divided into small lots, and cottages were built on them. Increasingly, these cottages are being upgraded to permanent, year-round residences. Although the lots are small and crowded, the township has never installed a sewerage system. Instead, homeowners have relied on individual septic systems to dispose of household sewage, even though the lots are too small to safely and effectively accommodate these systems. Unfortunately, after being forced to rely for years on aging systems located on small lots in an area with a high groundwater table, many residents find that their septic systems are failing.[1]

Both the township and the Michigan Department of Environmental Quality (DEQ)[2] concede that a majority of the septic systems in a three-to-five-mile area along

---

[1] A septic system works by providing an area for household and human waste to be broken down and disposed of safely in the soil. Waste initially travels to a septic tank, where it is held for a couple of days to allow solids, oils, water, and other particles to separate and to give bacteria an opportunity to break down waste. Solids and sludge remain in the tank, while partially treated wastewater flows out of the tank to a drainfield. The drainfield consists of a series of perforated, interconnected pipes lying in sand or gravel-filled trenches. The wastewater seeps out of the perforations and into the soil, which acts as an additional filter to break down and remove any remaining toxins in the water.

[2] References herein to the DEQ include the Director of the DEQ.

the shore of Lake Huron are old, undersized, and failing. As a result, raw sewage from the failed septic systems has been emptying into roadside ditches, storm sewers, streams, and outfalls that empty into Lake Huron. An approximately three-mile strip of the township's Lake Huron shoreline has been included on Michigan's list of impaired waters because of the presence of raw human sewage in the water. Numerous officials have testified that raw sewage in the township is a risk to the health, safety, and welfare of the local citizens and anyone who attempts to use the beaches or drink the ground water in this distressed area.

Since being made aware of the problem, the DEQ has attempted to work with the township to resolve it. In April 2004, the township entered into a district-compliance agreement with the DEQ. In the signed contract, the township agreed to construct a municipal-sewerage system by June 1, 2008. However, because of a lack of funds, the township refused to honor the agreement.[3] Consequently, sewage conditions in the township remain a serious health hazard and an environmental nightmare for those who live, travel, and swim in the affected area. As a result of the township's refusal to honor its agreement with the DEQ and to take responsibility for the discharge into Lake Huron of raw sewage generated in the township, the DEQ filed this case.

In its complaint, the DEQ alleges that these illegal discharges are the result of the township's refusal to take responsibility for numerous failing on-site septic

---

[3] One issue not properly raised before this Court is the township's breach of this agreement. I note that by signing the agreement, the township admitted its responsibility to fix the problem. Further, it seems obvious that enforcement of the agreement is one solution to this persistent problem.

systems in its jurisdiction. It claims that the township is responsible for the discharge of human waste within its boundaries under part 31 of the National Resources and Environmental Protection Act (NREPA), MCL 324.3101 *et seq.* The DEQ requested that the court grant injunctive relief to eliminate the discharges of raw and partially treated sewage into the state's waterways. Specifically, it requested that the court order the township to build and operate a sewerage system.

The township claimed that neither the courts nor the DEQ could impose liability on it for failing to provide a municipal-sewerage system. Yet despite the township's insistence that it has no obligation to install a sewerage system in the affected area, the township and the DEQ agree that a comprehensive solution for this problem is needed. Because of the pervasive number of failing septic systems and the severity of the public-health impact, merely requiring individual homeowners to repair or replace the on-site septic systems would not solve the problem. The lots are too small, and the area too developed, to maintain a large number of septic systems. Instead, it is clear that the municipality needs to formulate a comprehensive plan to address the issue.[4]

---

[4] It is also clear that the only comprehensive solution to the problem is the construction and installation of a sewerage system. In fact, this is the solution that the township decided to take to abide by the trial court's order to "take necessary corrective action to cease the illegal discharges and comply with Part 31 . . . ." Further, it is clear that the township's reticence regarding the construction and installation of a sewerage system does not stem from a philosophical objection to governmental provision of utilities. Instead, the township fears that it cannot pay for the construction and installation of a sewerage system, and it wants the state or some other entity to foot the bill. It has indicated that it would prefer to simply require individual landowners to use pump-and-haul systems to dispose of their sewage and to condemn properties if the landowners are unable to stop the leaching of sewage from their septic

Following the filing of the complaint, the township moved for summary disposition, asserting that under MCL 324.3109 the township cannot be held liable for the discharge of raw sewage of human origin from private residences into state waters. In essence, the township claimed that neither the court nor the DEQ has the authority to order it to remedy the situation. The trial court rejected the township's arguments and denied the motion, holding that although the state has enforcement authority over water pollution, "that does not eliminate the liability under [MCL 324.3109] that falls squarely on the municipality in which the discharge originated." The court then continued:

> The Plaintiff may indeed have exclusive enforcement, [sic] authority or regulatory authority. But that does not equate with the liability, and it doesn't alter the clear and unambiguous language of the statute that imposes liability.
>
> Likewise, the Health Department may have jurisdiction with respect to some aspects of the septic systems. But as to enforcement and regulation of [MCL 324.3109], that power lies with the Plaintiff with liability falling under the statute on the Defendant.[5]

The DEQ then filed a motion before the trial court for summary disposition pursuant to MCR 2.116(C)(10), claiming that the undisputed facts entitled it to judgment as a matter of law against the township for violating MCL 324.3109 and MCL

---

systems into the environment instead of paying for a sewerage system. Yet given the pervasiveness of this problem, the inadequacy of using pump-and-haul systems to address it indefinitely, and the lack of any other feasible homeowner-initiated solution, it is conceivable that many of the affected properties would be condemned if the township's preferred method of dealing with this situation were implemented.

[5] Although the township applied for leave to appeal this ruling, this Court denied the application. *Dep't of Environmental Quality v Worth Twp*, unpublished order of the Court of Appeals, entered July 2, 2008 (Docket No. 282183).

324.3112. The trial court granted the DEQ's motion, finding that the uncontroverted evidence indicated that numerous residences in the township had failing septic systems, which caused raw human sewage to discharge into state waters. The trial court also found that the discharges violated part 31 of NREPA and that the township was liable for the discharges under MCL 324.3109(2). The trial court's excellent opinion from the bench, which it adopted in its accompanying written order, bears repeating in its entirety:

> Well, really, when I look at these cross-motions together, I see issues, there are legal issues, then there's [sic] issues that are factual issues. And I'm going to try to address all of them. And starting first with the legal issues, several of the arguments that are raised by the Defendant in its motion for summary disposition are indeed arguments that were previously made and ruled on by this Court in September of 2007, when this Court ruled on the Defendant's motion for summary disposition at that time. And the arguments were rejected at that time, and were rejected again when this Court denied the Defendant's motion for reconsideration. Nevertheless, I will revisit them.
>
> For purposes of clarification, [MCL 324.3109(1)] provides that a person shall not, directly or indirectly, discharge into the waters of this state, a substance that is or may become injurious to the — and then it lists the public health, safety, welfare, the uses made of the water, the value of the riparian lands, etcetera, etcetera.
>
> [MCL 324.3109(2)] provides that if raw sewage of human origin is discharged, it is prima facie evidence of a violation by the municipality in which the discharge originated. I agree with the Defendant, that a prima facie case is the same as a rebuttable presumption. But what [MCL 324.3109(2)] does is it creates a presumption that raw human sewage is injurious to public health, the uses of water, etcetera, all of the things that are listed. And it clearly imposes liability on the municipality in which the discharge originated.

Now, why would it do that? Well, probably because local governments have the ability to construct and maintain wastewater treatment systems to require home owners to hook up to those systems, to adopt public health ordinances, to institute condemnation proceedings, etcetera, etcetera.

And the Plaintiff points out, and I agree, that this is evidence in Judge O'Connell's dissent in [*Lake Isabella Dev, Inc v Village of Lake Isabella*, 259 Mich App 393; 675 NW2d 40 (2003)], where he observed that there have been 40 years of legislation designed to require local government to manage its sewage because local government possesses the resources, the information and the local accountability to do so.

In my view, the plain language of the statute puts liability on the municipality where the discharge originated. And had the legislature wanted to impose a different scheme of liability, it could have said that the discharge of raw human — sewage of human origin, pardon me, is prima facie evidence of a violation by the municipality that directly discharges it, or it could have said by the person who discharges it. They said: "By the municipality in which it originates." Their language adds to the clear intent. When you look at the possibility of what they could have said, it lends further credence to [sic] the clear intent here is to impose liability on the municipality where the discharge originated. And, in fact, the statute goes on to address those circumstances where the municipality cannot be held responsible. So that is additional evidence of the very clear intent here of the legislature. In my view, the statute is unambiguous. It's unambiguous in making a municipality where the discharge originated subject to the remedies in [MCL 324.3115].

Now, the Defendant argues, as it did in September 2007, that strict liability cannot be imposed on the Township per Lake Isabella Development versus Lake Isabella. The holdings in Lake Isabella Development is [sic] that a rule promulgated by the Department of Environmental Quality did not comport with legislative intent because it imposed liability on the municipality to take over operation and

maintenance of a privately owned and built sewage system
if the owner fails to perform.

Now, DEQ did argue that the rule was an enforcement
mechanism for the strict liability imposed by [MCL
324.3109]. I don't think this falls precisely under the strict
ruling and holding in the Lake Isabella Development case.
They did address the argument that was made by DEQ.
And the Court of Appeals said that liability under [MCL
324.3109] requires actual knowledge, constructive knowl-
edge, or disregard under [MCL 324.3115]. I agreed with the
Plaintiff, I read those requirements to be necessary for
criminal liability. [MCL 324.3115] contains no knowledge,
constructive knowledge or disregard requirement for civil
fine or for injunctive relief. But, nevertheless, this case is
not dependent on strict liability.

The Township of Worth was aware, and has been aware,
for many years, of the discharge of raw human sewage into
the waters of this state. The affidavit of Janice Putz,
P-U-T-Z, who was the Township supervisor of November
2000 to November 2004, supports that. She indicates that
she received many complaints from residents of sewage
either running in the ditches, gullies, or onto neighboring
properties. She personally investigated and personally ob-
served failing septic systems with raw sewage, gray in color,
a distinct foul sewage odor, flowing into residents' lots into
drainage ditches.

Furthermore, the affidavit of Lynn Laughlin, L-A-U-G-
H-L-I-N, who was the zoning administrator, slash, ordi-
nance enforcement office, from October 2002 until Febru-
ary 2005, further supports this. She also received
complaints of sewer odor, as well as residents complaining
of unwanted discharges flowing onto their property. She
indicates that she would visit the site, personally, to verify
these complaints. And she formatted a sanitary complaint
form every time she received a complaint and recorded it.
She observed many instances of human sewage being
discharged into the Mill Creek and ultimately into Lake
Huron. She describes that there is an area of saturation of
human waste into the soil. And that when she walked on it,
the ground was saturated in sewage and was spongy. She

actually documented failing septic systems on a map and documented 30-plus leaching septic systems, and 30 to 40 homes that were pumping gray water onto the soil. She noted one particularly bad area where four or five homes had installed pumps and were pumping their bath, dish water and laundry wastewater onto the property. She noted on several occasions she witnessed trenches had been dug along property lines to drain saturated septic fields to the creek.

Furthermore, the affidavit of Grant Carman, C-A-R-M-A-N, who is the environmental health director from 1970 — well, he was with the Sanilac County Health Department from 1970 to 2007, for much of that time, the environmental health director, he said that for many years he observed numerous instances in Worth Township where the discharge of sewage of human origin is being made to the ground surface into ditches, over the lake bluff and through perimeter drains and storm drains. This was due to failing septic systems. That the failing septic systems existed right up to the date of his retirement, which was in August of 2007. He said he evaluated hundreds of septic systems in Worth Township in the area of concern, and 80 percent were in a state of failure. They were either openly discharging to a ditch, or discharging through a camouflage drain, or intermittently flooded due to the high seasonal water table. In some instances he said there was a direct discharge over the bluff to Lake Huron. He noted these conditions on permits and inspection reports.

Furthermore, the affidavit of Susan VanDyke, who says that she was with the Sanilac County Health Department from April 2002 to the present, as an environmental health staff sanitarian, she observed numerous instances in Worth Township where the discharge of sewage of human origin was being made to the ground surface into ditches, again, over the lake bluff, through perimeter drains and storm drains. That has occurred and continues to occur due to failing septic systems. She also says the failing septic systems are prevalent in a densely populated region of Worth Township, which is the area of concern. That these failures have been documented in a complaint log, and in

the Township files. She evaluated dozens of septic systems in Worth Township that were failing. Eighty to 85 percent were in the state of failure. They were openly discharging into a ditch. She noted, again, those failed conditions on permits and inspection reports.

Furthermore, there is a district compliance agreement that was signed by the Department of Environmental Quality and Worth Township on August 9, 2004. And that district compliance agreement very clearly sets forth the Township's knowledge and awareness of the fact that failing septic systems have caused raw sewage of human origin to enter the waters of this state. And that action needs to be taken to abate that situation.

Furthermore, Worth Township, itself, passed resolution [sic] indicating — Resolution 2004-9: There are numerous documented instances of failed sewage systems within the densely populated area of Worth Township.

Further, the Ordinance notes that they are depositing sewage directly to the surface and ground water and creating a public health hazard. The resolution goes on to acknowledge that [a] wastewater collection and treatment system is going to be functional, and that action has to be taken until it is functional.

Likewise, Resolution 2005-10 makes the very same observations that there are failed sewage systems in Worth Township. That sewage is being deposited directly to the surface and groundwater, creating a public health hazard. And that action has to be taken until a wastewater collection and treatment system is functional.

So even if strict liability is, in the view of the Court of Appeals, not the case with the statute, Worth Township had years of notice, years of knowledge that this was an ongoing pervasive problem throughout the Township, that there was a discharge into the waters of this state, and that it created a hazard for human health.

Going on to the Defendant's other legal argument[s], and they're made in response to the Plaintiff's motion, the Defendant, again, raises some issues that were previously raised. And, essentially, the Defendant argues that given

separation of powers, and the right to local self-government, it cannot be compelled to build a public sewer system, and that there is no authority to say that it can be compelled. Well, I'm not going to compel Worth Township to build a public sewer system. But there is, in fact, authority. And it's [*People ex rel Stream Control Comm v Port Huron*, 305 Mich 153; 9 NW2d 41 (1943)]. The Steam [sic] Control Commission ordered the City of Port Huron to construct a sewage treatment plant. The trial court refused to enforce that order because it used a balance test in determining whether injunctive relief was appropriate, and weighed out whether there would be greater harm to the city to enforce the order than there would be to Plaintiff in denying enforcement of the order. The Supreme Court reversed that saying there's no balancing done in the issue of Public Health, even though the City claimed it didn't have the money. The Supreme Court ordered enforcement of the Steam [sic] Control Commission's order.

Now, I have been asked to take judicial notice with regard to some underlying facts of that case. And I'm going to decline that request, because the case is what it is. It is the law. And I don't think it's appropriate to take judicial notice or relevant to take judicial notice of underlying facts in that case that may or may not be facts in that case. Because the only pertinent aspect of that case is the holding of the Supreme Court.

Furthermore, there is authority in NREPA for the relief requested, which is to require that the discharge be stopped, and that the problem be fixed. And that is that [MCL 324.3115] provides that the Attorney General may commence a civil action for appropriate relief, including a permanent or temporary injunction. Further, it provides that the Court has jurisdiction to restrain the violation and require compliance. And I would note one other thing that I really don't think is dispositive by itself. But I think it is something that bears mentioning. And that is that no one has unilaterally told Worth Township that they had to build a sewer system. Actually, the district compliance agreement that was signed by the DEQ and Worth Township agreed to do just that. Worth Township agreed to a

time table for construction of a sewage treatment system. And, according to the affidavit of Janice Putz, that agreement was signed after much discussion with the full township board at open meetings. So Worth Township reached the conclusion, after the entire process of open meetings, and township legislative action, that that is what was required to be done. Even the resolution that I previously mentioned acknowledged that decision to build a wastewater collection and treatment system. So they've acknowledged the depth of the problem, and the need to address it as a pervasive problem.

Finally, there is the argument that was raised in 2007, and, again, now compelling Worth Township to comply with NREPA that would violate the *Headlee Amendment* [Const 1963, art 9, §§ 25 to 34]. This is not like [*Delta Co v Dep't of Natural Resources*, 118 Mich App 458; 325 NW2d 455 (1982), overruled in part by *Livingston Co v Dep't of Management & Budget*, 430 Mich 635; 425 NW2d 65 (1988),] where a general duty to avoid unlawful pollution was changed to a more specific duty to construct a PVC liner or a 2-foot clay backup on a bustling solid waste landfill. There are no new or increased duties in this case.

The statute before *Headlee* in this case would have required Worth Township to comply with the requirements not to discharge raw sewage of human origin into any waters of this state. The statute, after *Headlee*, remains the same. The only thing that is changed is the mechanism of enforcement. The mechanism of the statute before *Headlee* was a hearing before a commission that could then order compliance. The mechanism after *Headlee* is an action in Circuit Court with a judge having the ability to order compliance. *Headlee* is simply not implicated in this case.

Now, there are a couple factual arguments that the Defendant makes. One is that there is no proof that the contamination is of human origin. And the support they have for that is an affidavit in which the affiant says that there was no testing that appears to be done to determine if it was of human origin. I would say that the evidence here that it is of human origin isn't just compelling, it's overwhelming, and it's unrebutted. The evidence, as I

already described, comes from numerous eye witness accounts of people who have observed the failing septic systems, and observed the raw sewage from those systems running into the waters of this state. There is no other method of disposal of human waste other than these septic systems. And the Township itself has acknowledged their failure. To say that there is no proof that the contamination is of human origin is almost preposterous.

The argument is also made that the contamination is virtually non-existent as of 2008. The September 16, 2008 report of a sanitary wastewater survey conducted in Worth Township shows that there is contamination to surface water with fecal coliform and E. coli bacterial counts succeeding [sic, exceeding] water quality standard[s].

The report goes on to indicate that 14 sites were sampled for fecal coliform. And 36 percent were above the water quality standard. Thirty-one sites were sampled for E. coli, and 81 percent were above the water quality standard for total body contact, which means that people can't swim in that water. Fifty-two percent were above the water quality standard for partial body contact, which means people can't fish in that water. Of the 14 sewers sampled that directly discharge into the Lake Huron, 36 percent had fecal coliform counts greater than Michigan's water quality standard.

I would say, again, with respect to that issue, the evidence isn't just compelling, it's overwhelming, and it is unrebutted, and it very clearly entitles the Plaintiff to summary disposition under MCR 2.116(C)(10), and I am granting the Plaintiff's motion, and I'm denying the Defendant's motion.

Pursuant to MCL 324.3115, the trial court then directed the township to take necessary corrective measures in accordance with a given time schedule and to pay fines and attorney fees. The township now appeals.[6]

---

[6] It is important to note that this is a civil case between a local unit of government and the state for injunctive relief to resolve an environmen-

II. ISSUE

On appeal, the township claims that it is not responsible for the inadvertent discharge of raw sewage from private septic systems within its boundaries.[7] In particular, the township makes the surprising assertion that Michigan courts have no authority to grant injunctive relief to resolve this dispute. Yet remarkably, the majority opinion reverses the trial court and concludes that MCL 324.3109(2) does not apply to the township.

Historically, townships have been responsible for addressing issues concerning the infrastructure needed to provide proper utilities and access to properties within their boundaries. This includes the responsibility for overseeing proper disposal of sewage generated by businesses and residences within the township. Under the Michigan Constitution, a township has the authority to grant public utilities franchises within its constituted boundaries. Const 1963, art 7, § 19. Under the Township and Village Public Improvement and Public Service Act, townships have the authority to acquire property through purchase, acceptance, or condemnation and to finance, construct, and maintain sanitary sewers and

_____

tal and public-health crisis. It is not a criminal action; it is an action in equity to remediate a serious problem in the township.

[7] In its brief on appeal, defendant raises a separation-of-powers argument and alleges a Headlee Amendment violation, see Const 1963, art 9, §§ 25 to 34. In my opinion, both arguments are meritless. MCL 324.3115 provides that the Attorney General may seek an injunction for appropriate relief in this circumstance, and the trial court's injunction simply ordered the township to develop a comprehensive plan to remediate an environmental and public-health crisis. Most importantly, it is the responsibility of the township to remediate the problem. There exists no Headlee Amendment violation because even before the Headlee Amendment was implemented, the township had been responsible for remediating sewage problems within its boundaries.

sewage disposal plants and equipment. MCL
41.411(1) and (3). Further, townships have the statu-
tory authority to adopt ordinances regulating public
health, safety, and welfare, including ordinances that
require individual property owners to hook up to a
public sanitary-sewerage system. MCL 41.181; MCL
333.12753(1); see also MCL 324.4301 *et seq.*

These historical obligations entrusted to a township
to oversee the proper disposal of sewage within its
boundaries are further reflected by MCL 323.1 *et seq.*, a
former act establishing a state water resources commis-
sion and repealed by 1994 PA 451, which in turn
enacted the more comprehensive NREPA. Former MCL
323.6(a) stated, "It shall be unlawful for any person
directly or indirectly to discharge into the waters of the
state any substance which is or may become injurious to
the public health, safety, or welfare . . . ." Former MCL
323.6(b) stated:

> The discharge of any raw sewage of human origin,
> directly or indirectly into any of the waters of the state
> shall be considered prima facie evidence of the violation of
> [MCL 323.6(a)] unless said discharge shall have been
> permitted by an order, rule, or regulation of the commis-
> sion. Any city, village or township which permits, allows or
> suffers the discharge of such raw sewage of human origin
> into any of the waters of the state by any of its inhabitants
> or persons occupying lands from which said raw sewage
> originates, shall be subject only to the remedies provided
> for in [MCL 323.7].

The Legislature clearly intended that a local unit of
government, such as a township, be responsible for both
the direct and indirect discharge of human sewage
within its boundaries into state waters. The Legislature
further intended that a township be subject only to the
remedies provided by the act, and it gave the Attorney

General's office authority under former MCL 323.6(d) to pursue an action to resolve the violations.[8]

After MCL 323.1 *et seq* was enacted, it went through several amendments and eventually was incorporated into part 31 of NREPA, MCL 324.3101 *et seq*. When it incorporated the statute into NREPA, the Legislature did not alter a township's responsibility for the discharge of raw sewage into state waters. MCL 324.3109 states:

> (1) A person shall not directly or indirectly discharge into the waters of the state a substance that is or may become injurious to any of the following:
>
> (a) To the public health, safety, or welfare.
>
> (b) To domestic, commercial, industrial, agricultural, recreational, or other uses that are being made or may be made of such waters.
>
> (c) To the value or utility of riparian lands.
>
> (d) To livestock, wild animals, birds, fish, aquatic life, or plants or to their growth or propagation.
>
> (e) To the value of fish and game.
>
> (2) The discharge of any raw sewage of human origin, directly or indirectly, into any of the waters of the state shall be considered prima facie evidence of a violation of this part by the municipality in which the discharge originated unless the discharge is permitted by an order or rule of the department. If the discharge is not the subject of a valid permit issued by the department, a municipality responsible for the discharge may be subject to the remedies provided in [MCL 324.3115].[9]

---

[8] MCL 323.6(d) stated:

   Any violation of any provision of [MCL 323.6] shall be prima facie evidence of the existence of a public nuisance and in addition to the remedies provided for in this act may be abated according to law in an action brought by the attorney general in a court of competent jurisdiction.

[9] MCL 324.3109(3) solely concerns a municipality's responsibility for an unauthorized discharge by a sewerage system that services, but is not

MCL 324.3101(m) defines "municipality" as "this state, a county, city, village, or township, or an agency or instrumentality of any of these entities." By defining a "municipality" to include a township, the Legislature chose not to alter the liability of the local unit of government for the discharge of human sewage into state waters within its boundaries.[10]

MCL 324.3109 provides a methodology to resolve and remediate any environmental problems that may occur within a municipality. MCL 324.3109(1) imposes liability for a direct discharge of raw sewage into the waters of this state. MCL 324.3109(2) imposes liability on a

---

owned by, the municipality. Because no sewerage system even exists within in the township, this subsection is wholly inapplicable to the present case.

[10] I disagree with the majority's rationale that because it can identify another entity that it believes should also hold some responsibility for the discharges, the township should automatically be let off the hook. The fact that another governmental entity, such as the state, a county, a city, or a village, has overlapping jurisdiction over the area where the discharge originated and could potentially be held liable for the discharge is irrelevant to the fact that the township can *also* be held responsible for a discharge of raw sewage within its borders and be subject to the remedies set forth in MCL 324.3115. MCL 324.3115 permits the Attorney General to file a civil suit against any appropriate party to compel compliance with the statute and allows for injunctive relief. MCL 324.3115(1) states, in pertinent part:

> The department may request the attorney general to commence a civil action for appropriate relief, including a permanent or temporary injunction, for a violation of this part or a provision of a permit or order issued or rule promulgated under this part. . . . The court has jurisdiction to restrain the violation and to require compliance. In addition to any other relief granted under this subsection, the court, except as otherwise provided in this subsection, shall impose a civil fine of not less than $2,500.00 and the court may award reasonable attorney fees and costs to the prevailing party.

If the township believes that it is not the only municipality that should be held responsible for these discharges, the appropriate solution is to seek to add these additional entities as codefendants in this action.

municipality, including a township, for any "discharge of any raw sewage of human origin, directly or indirectly, into any of the waters of the state" if the discharge occurred within that municipality's borders.

Through a process of questionable linguistics, unnecessary definitions, and rebuttable presumptions, the majority concludes that MCL 324.3109(2) only applies to a municipality if it is the discharging party. Yet if the majority's interpretation were correct, MCL 324.3109(2) would be unnecessary in light of MCL 324.3109(1). MCL 324.3109(1), which the majority opinion fails to take into consideration, prohibits a person from directly or indirectly discharging human sewage into the waters of this state. A "person," for purposes of NREPA, includes a governmental entity. MCL 324.301(h). It is MCL 324.3109(1), not MCL 324.3109(2), that applies to circumstances in which the actions of a municipality lead to a discharge. MCL 324.3109(6) identifies remedies available to address such a violation.

The purpose of MCL 324.3109(2) is to make the local municipality responsible for any discharges within its boundaries, even if the municipality did not actively discharge the sewage in question. Although the majority believes that the phrase "by the municipality" in this subsection indicates that the municipality only faces responsibility if its actions lead to the discharge, I find this interpretation of the relevant phrase to be incorrect. The majority correctly notes that *Random House Webster's College Dictionary* (1997) includes "through the agency of" and "as a result or on the basis of" among its definitions of the term "by." However, the proper application of these definitions to the phrase "by the municipality" does not automatically lead to the conclusion that the phrase indicates that some direct action by the municipality causing the discharge must

occur for the municipality to be held responsible. Instead, the evidence makes it quite clear that in this case, the massive discharges of human waste into Lake Huron have occurred "as a result" of the township; if the township had a sewerage system, such discharges would not occur. Regardless, I believe that a proper reading does not require implementing such semantics; the phrase "by the municipality" is simply used to modify "violation," in order to indicate the entity subject to liability for the discharge.[11]

I also note that the phrase "prima facie evidence" in MCL 324.3109(2) is modified by the phrase "of a violation of this part . . . ." This means that the discharge of raw human sewage into state waters is prima facie evidence of a violation of part 31. Part 31 includes MCL 324.3109(1), which prohibits the discharge of a substance that is or may become injurious to public health, safety, or welfare. Accordingly, this prima facie evidence of a violation of part 31 is rebutted by a showing by the municipality that the discharges are *not* injurious to public health, safety, or welfare, e.g., that the discharges are nominal or will not cause injury. Yet in this case, the discharges are pervasive, extensive, and of such high concentrations that they are clearly injurious to the public health, safety, or welfare.

In addition, the majority orders that on remand, the trial court must enter an order of summary disposition in favor of defendant. The majority appears to determine that summary disposition is appropriate because any prima facie evidence indicating that the township is responsible for discharges of human waste within its bor-

---

[11] The majority mistakenly concludes that the DEQ is a municipality under the definition set forth in MCL 324.3101(m). However, MCL 324.3101(d) indicates that part 31 of NREPA uses the term "department" to refer to the DEQ. If the Legislature had wished to include the DEQ in its definition of "municipality," it is conceivable that it would have included "the department" in its list of entities, but it did not.

ders into state waters is thoroughly and completely rebutted by the fact that the township does not operate any sanitary system that could be the source of the discharge. However, rebuttal of prima facie evidence of a violation does not automatically mean that summary disposition in favor of the opposing party is appropriate, especially in a case like this, in which the evidence suggests that the township is responsible for the ongoing discharge of human waste into state waters by actively delaying the construction of a sewerage system.[12] At the very least, the majority should remand for additional fact-finding instead of summarily granting summary disposition in favor of the township.

In *Lake Isabella*, 259 Mich App at 414 (O'CONNELL, J., dissenting), I noted that "local governments, through forty years of legislation designed to require them to manage their sewage, possess the resources, information, and local accountability needed to take responsibility" for an abandoned sewerage system. The same rationale applies here. It has always been, currently is, and, until the Legislature devises a new methodology to remediate sewage problems, always will be the local unit of government's responsibility to provide a proper and effective plan for sewage disposal within its boundaries. The township has no viable claim that another governmental entity should bear the responsibility of taking the necessary corrective action.[13]

---

[12] In addition, it is likely that the township also has some direct responsibility for the leaching of human waste into state waterways. The Worth Township office, located at 6903 Lakeshore Road, is located within the affected area. The office presumably has a septic system, and it is conceivable that waste from this township-owned septic system is leaching into state waters.

[13] In my opinion, *Lake Isabella* was wrongly decided. The Supreme Court should grant leave and both reverse the present case and overrule *Lake Isabella*.

I would affirm and adopt as my own the well-reasoned decision of the learned trial judge.[14]

---

[14] The majority effectively concludes that the state has no authority to order local units of government to remediate sewage problems. The unintended consequence of this decision is that no one is responsible for the abominable and unsanitary conditions in Worth Township.