**Lansing, Michigan**

# Opinion

Chief Justice:          Justices:
Robert P. Young, Jr.   Michael F. Cavanagh
                        Marilyn Kelly
                        Stephen J. Markman
                        Diane M. Hathaway
                        Mary Beth Kelly
                        Brian K. Zahra

FILED MAY 17, 2012

STATE OF MICHIGAN

SUPREME COURT

DEPARTMENT OF ENVIRONMENTAL
QUALITY and DIRECTOR OF THE
DEPARTMENT OF ENVIRONMENTAL
QUALITY,

      Plaintiffs-Appellants,

v                         No. 141810

WORTH TOWNSHIP,

      Defendant-Appellee.

BEFORE THE ENTIRE BENCH

HATHAWAY, J.

At issue is whether a municipality such as a township can be held responsible under MCL 324.3109(2) of the Natural Resources and Environmental Protection Act (NREPA)[1] for raw sewage discharged into state waters by private citizens within the township's borders. We conclude that under NREPA, a municipality can be held

---

[1] MCL 324.101 *et seq.*

responsible for,[2] and required to prevent,[3] the discharge when the raw sewage originates within its borders, even when the raw sewage is discharged by a private party and not directly discharged by the municipality itself.

Therefore, we reverse the judgment of the Court of Appeals because it interpreted MCL 324.3109(2) in a manner that precludes a municipality from being held responsible for such a discharge. We remand this case to the Court of Appeals to address defendant's remaining arguments on appeal.[4]

## I. FACTS AND PROCEDURAL HISTORY

This case arises from the contamination of surface waters within and surrounding defendant, Worth Township, including Lake Huron and several of its tributaries. Plaintiff, the Department of Environmental Quality (DEQ),[5] conducted surveys of water quality in the area of concern in 2003, 2006, and 2008. The DEQ collected water samples to verify and quantify the presence and levels of fecal coliform and *E. coli*

---

[2] MCL 324.3109(2).

[3] MCL 324.3115.

[4] We do not decide the issues raised by Worth Township's two additional defenses, including whether the remedial action ordered by the trial court violates the Headlee Amendment, specifically Const 1963, art 9, § 29, and whether MCL 324.3115(1) authorizes the trial court's order imposing a schedule for implementing corrective action, a fine, and an attorney-fee award. Those issues were not addressed by the Court of Appeals and are to be decided on remand.

[5] The director of the DEQ is also listed as a named plaintiff. For ease of reference, we refer to the plaintiffs as the DEQ only.

2

bacteria.  The DEQ also made sensory observations of privately owned septic systems[6] on properties located within the borders of the township.  The survey data demonstrated that the surface waters were contaminated with both fecal coliform and *E. coli* bacteria.  The survey data also indicated that the conditions were becoming progressively worse.

There is no municipal "sewerage system"[7] located within the township.  The parties agree that the surface waters in the area of concern are contaminated by raw sewage of human origin.[8]  The parties also agree that the contamination comes from septic systems on privately owned properties located within Worth Township.  The private properties at issue are located in a three- to five-mile area along the shore of Lake Huron.  Most of the area was initially developed with summer cottages in mind, but the

---

[6] A functioning septic system provides an area for household and human waste to be safely broken down and disposed of in soil.  A system generally contains one or more septic tanks, to which waste initially travels from the home.  While in the septic tanks, the waste breaks down and separates into solids and liquid, or effluent.  The solids remain in the tank.  The effluent travels to a soil absorption system, which usually consists of a series of perforated pipes in a trench of sand or gravel, and the treated water is absorbed into soil.  See *Dep't of Environmental Quality v Worth Twp*, 289 Mich App 414, 425; 808 NW2d 260 (2010) (O'CONNELL, J., dissenting).

[7] MCL 324.4101(h) defines a "sewerage system."  It states:

> "Sewerage system" means a system of pipes and structures including pipes, channels, conduits, manholes, pumping stations, sewage or waste treatment works, diversion and regulatory devices, outfall structures, and appurtenances, collectively or severally, actually used or intended for use by the public for the purpose of collecting, conveying, transporting, treating, or otherwise handling sanitary sewage or other industrial liquid wastes that are capable of adversely affecting the public health.

[8] For the remainder of this opinion, the statutory phrase "raw sewage of human origin" will be referred to as "raw sewage."

3

cottages have increasingly been converted into year-round residences.  According to the evidence submitted to the trial court, the majority of the septic systems in the area are old, undersized, and failing.  Drain fields are oversaturated with raw sewage, and raw sewage is being directed into ditches and streams leading to Lake Huron.  In at least one instance, raw sewage was directly discharged over the lake bluff into Lake Huron.  As a result of the contamination, this section of Lake Huron has been included on Michigan's list of impaired waters.

After the first survey was performed by the DEQ, Worth Township and the DEQ attempted to remedy the problem.  In April 2004, they entered into a district compliance agreement, wherein Worth Township agreed to construct a municipal sewerage system by June 1, 2008.  However, Worth Township did not construct such a system, citing a lack of funds.  As a result, the DEQ filed this case seeking injunctive relief under part 31 of NREPA, MCL 324.3101 *et seq.*, to compel the township to prevent the discharge of raw sewage into the waters of the state.

Worth Township moved for summary disposition, arguing that neither the courts nor the DEQ has the authority to hold a township liable for the discharge of raw sewage from private residences into state waters.  The trial court denied the motion.  The DEQ then moved for summary disposition, claiming that the undisputed facts entitled it to judgment as a matter of law.  The trial court granted the DEQ's motion for summary disposition and directed Worth Township to take necessary corrective measures in a

given time frame to prevent the discharge of raw sewage and to pay fines and attorney fees.[9]

---

[9] The remedy was ordered pursuant to MCL 324.3115, which sets forth the remedies and penalties for a violation of part 31 of NREPA. It provides in pertinent part:

> (1) The [DEQ] may request the attorney general to commence a civil action for appropriate relief, including a permanent or temporary injunction, for a violation of this part or a provision of a permit or order issued or rule promulgated under this part. An action under this subsection may be brought in the circuit court for the county of Ingham or for the county in which the defendant is located, resides, or is doing business. If requested by the defendant within 21 days after service of process, the court shall grant a change of venue to the circuit court for the county of Ingham or for the county in which the alleged violation occurred, is occurring, or, in the event of a threat of violation, will occur. The court has jurisdiction to restrain the violation and to require compliance. In addition to any other relief granted under this subsection, the court, except as otherwise provided in this subsection, shall impose a civil fine of not less than $2,500.00 and the court may award reasonable attorney fees and costs to the prevailing party. However, all of the following apply:

> (a) The maximum fine imposed by the court shall not be more than $25,000.00 per day of violation.

> (b) For a failure to report a release to the [DEQ] or to the primary public safety answering point under [MCL 324.3111b(1)], the court shall impose a civil fine of not more than $2,500.00.

> (c) For a failure to report a release to the local health department under [MCL 324.3111b(2)], the court shall impose a civil fine of not more than $500.00.

> * * *

> (7) A civil fine or other award ordered paid pursuant to this section shall do both of the following:

> (a) Be payable to the state of Michigan and credited to the general fund.

Worth Township appealed the trial court's decision. In a published opinion, the Court of Appeals reversed the trial court's ruling and remanded for an entry of summary disposition in favor of the township.[10] The Court of Appeals majority held that under MCL 324.3109(2), a municipality cannot be required to prevent the discharge of raw sewage into state waters when the municipality itself has not discharged the raw sewage[11] and the municipality has not otherwise accepted responsibility pursuant to MCL 324.3109(3).[12] The Court of Appeals dissent would have affirmed the trial court's ruling and adopted the trial court's decision as its own.[13]

This Court granted the DEQ's application for leave to appeal.[14] Our grant order framed the issue as "whether [NREPA] empowers the [DEQ] to seek, and the circuit court to grant, an order effectively requiring a township to install a sanitary sewer system when a widespread failure of private septic systems results in contamination of lake waters."[15] While NREPA does not specifically authorize a circuit court to compel a municipality to install a sewerage system to remedy a widespread failure of private septic

---

        (b) Constitute a lien on any property, of any nature or kind, owned by the defendant.

[10] *Worth Twp*, 289 Mich App at 424.

[11] *Id.*

[12] See *id.* at 420.

[13] *Id.* at 444 (O'CONNELL, J., dissenting).

[14] *Dep't of Environmental Quality v Worth Twp*, 489 Mich 856 (2011).

[15] *Id.*

6

systems, NREPA does provide that "[t]he court has jurisdiction to restrain [a NREPA] violation and to require compliance"[16] with NREPA. In this case, the trial court's opinion specifically states that it does not compel the construction of a sewerage system. Consistently with MCL 324.3115(1), the trial court directed Worth Township to take necessary corrective action to prevent the discharge at issue. However, the parties agree that the most practical and comprehensive method for restraining the discharge is to construct a sewerage system. Accordingly, the issue before us is whether a municipality can be held responsible under NREPA for raw sewage discharged into state waters by private citizens within the municipality's borders.

## II. STANDARD OF REVIEW

This case involves the interpretation of a statute, which is a question of law that this Court reviews de novo.[17]

## III. ANALYSIS

At issue is whether a municipality can be held responsible under NREPA for raw sewage discharged into state waters by private citizens within the municipality's borders. MCL 324.3109 sets forth the statutory framework regarding violations of NREPA involving unlawful discharges into state waters. MCL 324.3109 provides:

> (1) A person shall not directly or indirectly discharge into the waters of the state a substance that is or may become injurious to any of the following:

---

[16] MCL 324.3115(1).

[17] *People v Lee*, 489 Mich 289, 295; 803 NW2d 165 (2011); *Miller-Davis Co v Ahrens Constr, Inc*, 489 Mich 355, 361; 802 NW2d 33 (2011).

7

(a) To the public health, safety, or welfare.

(b) To domestic, commercial, industrial, agricultural, recreational, or other uses that are being made or may be made of such waters.

(c) To the value or utility of riparian lands.

(d) To livestock, wild animals, birds, fish, aquatic life, or plants or to their growth or propagation.

(e) To the value of fish and game.

(2) The discharge of any raw sewage of human origin, directly or indirectly, into any of the waters of the state shall be considered prima facie evidence of a violation of this part by the municipality in which the discharge originated unless the discharge is permitted by an order or rule of the [DEQ]. If the discharge is not the subject of a valid permit issued by the [DEQ], a municipality responsible for the discharge may be subject to the remedies provided in [MCL 324.3115]. If the discharge is the subject of a valid permit issued by the [DEQ] pursuant to [MCL 324.3112], and is in violation of that permit, a municipality responsible for the discharge is subject to the penalties prescribed in [MCL 324.3115].

(3) Notwithstanding subsection (2), a municipality is not responsible or subject to the remedies provided in [MCL 324.3115] for an unauthorized discharge from a sewerage system as defined in [MCL 324.4101] that is permitted under this part and owned by a party other than the municipality, unless the municipality has accepted responsibility in writing for the sewerage system and, with respect to the civil fine and penalty under [MCL 324.3115], the municipality has been notified in writing by the [DEQ] of its responsibility for the sewerage system.

(4) Unless authorized by a permit, order, or rule of the department, the discharge into the waters of this state of any medical waste, as defined in . . . MCL 333.13801 to 333.13831, is prima facie evidence of a violation of this part and subjects the responsible person to the penalties prescribed in [MCL 324.3115].

(5) Beginning January 1, 2007, unless a discharge is authorized by a permit, order, or rule of the department, the discharge into the waters of this state from an oceangoing vessel of any ballast water is prima facie evidence

8

of a violation of this part and subjects the responsible person to the penalties prescribed in [MCL 324.3115].

(6) A violation of this section is prima facie evidence of the existence of a public nuisance and in addition to the remedies provided for in this part may be abated according to law in an action brought by the attorney general in a court of competent jurisdiction.

When interpreting statutes, this Court must "ascertain and give effect to the intent of the Legislature."[18] The words used in the statute are the most reliable indicator of the Legislature's intent and should be interpreted on the basis of their ordinary meaning and the context within which they are used in the statute.[19] In interpreting a statute, this Court avoids a construction that would render any part of the statute surplusage or nugatory.[20] "As far as possible, effect should be given to every phrase, clause, and word in the statute."[21] Moreover, the statutory language must be read and understood in its grammatical context.[22] When considering the correct interpretation, the statute must be read as a whole, unless something different was clearly intended.[23] Individual words and phrases, while important, should be read in the context of the entire legislative scheme.[24]

---

[18] *People v Koonce*, 466 Mich 515, 518; 648 NW2d 153 (2002).

[19] *People v Morey*, 461 Mich 325, 330; 603 NW2d 250 (1999).

[20] *People v McGraw*, 484 Mich 120, 126; 771 NW2d 655 (2009), citing *Baker v Gen Motors Corp*, 409 Mich 639, 665; 297 NW2d 387 (1980).

[21] *Sun Valley Foods Co v Ward*, 460 Mich 230, 237; 596 NW2d 119 (1999).

[22] *Herman v Berrien Co*, 481 Mich 352, 366; 750 NW2d 570 (2008).

[23] *Sun Valley*, 460 Mich at 237.

[24] *Herman*, 481 Mich at 366.

We begin by examining the language of MCL 324.3109(1). This subsection sets forth the manner in which a "person" is deemed to have violated part 31 of NREPA. For purposes of part 31, a "person" is defined as "an individual, partnership, corporation, association, governmental entity, or other legal entity." MCL 324.301(h). Thus, the term "person" includes a governmental entity such as Worth Township. MCL 324.3109(1)(a) provides that a person violates part 31 if the person "directly or indirectly discharge[s] into the waters of the state a substance that is or may become injurious to . . . the public health, safety, or welfare." Accordingly, MCL 324.3109(1) is applicable to a governmental entity such as Worth Township if the governmental entity directly or indirectly discharges into state waters a substance that is or may become injurious to public safety.

Next, MCL 324.3109(2) provides specific language with regard to violations by governmental entities. Its first sentence provides that the

> discharge of any raw sewage . . . , directly or indirectly, into any of the waters of the state shall be considered prima facie evidence of a violation of this part by the municipality in which the discharge originated unless the discharge is permitted by an order or rule of the [DEQ].

There is no dispute that raw sewage is being discharged into state waters from within Worth Township. Nor is this discharge permitted by an order or rule of the DEQ. Thus, the phrase "*shall be considered prima facie evidence of a violation of this part by the municipality in which the discharge originated*" is at the core of the dispute before us.

The Court of Appeals majority interpreted this phrase to mean that when raw sewage originating within the municipality's borders is discharged into state waters, this subsection creates a rebuttable presumption that the municipality itself discharged the

10

sewage. And if the municipality proves that it did not cause the discharge, it avoids responsibility.[25] The majority stated:

> MCL 324.3109(2) clearly does not make a municipality automatically and conclusively responsible for a discharge of raw sewage. Rather, it merely creates the presumption that the municipality is responsible until and unless the municipality is able to establish that it did not violate part 31 of NREPA, MCL 324.3101 *et seq.*, which deals with the protection of water resources.
>
> *   *   *
>
> In sum, we hold that MCL 324.3109(2) does not impose blanket responsibility on a municipality for any sewage discharge that occurs within its jurisdiction and a corresponding obligation to remedy such discharges without regard to cause. Rather, it merely creates the presumption that such a discharge originated with the municipality. But when, as here, the municipality, [Worth Township] in this case, cannot have been the cause of the discharge, it holds no responsibility for the discharge. And, therefore, there is no basis to impose on [Worth Township] the obligation to pursue the remedy desired by [the DEQ], the installation of a public sanitary-sewerage system. [*Dep't of Environmental Quality v Worth Twp*, 289 Mich App 414, 419, 424; 808 NW2d 260 (2010).]

The Court of Appeals dissent opined that MCL 324.3109(2) creates a rebuttable presumption that part 31 of NREPA has been violated when raw sewage has been discharged into state waters and that the responsibility for rebutting that presumption falls on the municipality where the violation took place. The dissent stated:

> [T]he phrase "prima facie evidence" in MCL 324.3109(2) is modified by the phrase "of a violation of this part . . . ." This means that the discharge of raw human sewage into state waters is prima facie

---

[25] "Prima facie evidence" is "[e]vidence that will establish a fact or sustain a judgment unless contradictory evidence is produced." Black's Law Dictionary (8th ed), p 598. Thus, the term "prima facie evidence" creates a presumption that may be rebutted by contradictory evidence.

evidence of a violation of part 31. Part 31 includes MCL 324.3109(1), which prohibits the discharge of a substance that is or may become injurious to public health, safety, or welfare. Accordingly, this prima facie evidence of a violation of part 31 is rebutted by a showing by the municipality that the discharges are *not* injurious to public health, safety, or welfare, e.g., that the discharges are nominal or will not cause injury. Yet in this case, the discharges are pervasive, extensive, and of such high concentrations that they are clearly injurious to the public health, safety, or welfare. [*Worth Twp*, 289 Mich App at 442 (O'CONNELL, J., dissenting).]

The primary distinction between the two interpretations is that the Court of Appeals majority held that MCL 324.3109(2) only creates a rebuttable presumption that a discharge of raw sewage was caused by a municipality in violation of NREPA, whereas the Court of Appeals dissent would have held that the presumption is that NREPA was violated and responsibility for the violation is assigned to the municipality where the violation took place, regardless of who caused the discharge. We find the latter interpretation to be correct. When MCL 324.3109(2) is read in conjunction with the surrounding subsections and in the historical context of statutes governing raw-sewage disposal, it is clear that the Legislature intended to create a presumption that the municipality is in violation of NREPA when a discharge originates within its boundaries, irrespective of who actually caused the discharge.

The historical obligation of a municipality to oversee the proper disposal of sewage within its boundaries is reflected in former MCL 323.1 *et seq*. Specifically, former MCL 323.6(a), as amended by 1965 PA 328, stated, "It shall be unlawful for any person directly or indirectly to discharge into the waters of the state any substance which is or may become injurious to the public health, safety, or welfare . . . ." Former MCL 323.6(b), as amended by that same act, stated:

12

The discharge of any raw sewage of human origin, directly or indirectly into any of the waters of the state shall be considered prima facie evidence of the violation of [former MCL 323.6(a)] unless said discharge shall have been permitted by an order, rule, or regulation of the [Water Resources Commission]. Any city, village or township which permits, allows or suffers the discharge of such raw sewage of human origin into any of the waters of the state by any of its inhabitants or persons occupying lands from which said raw sewage originates, shall be subject only to the remedies provided for in [former MCL 323.7].

As Judge O'CONNELL noted in his dissent, it is clear that, historically, the Legislature intended that a local unit of government, such as a township, be responsible for discharges into state waters involving raw sewage originating within its boundaries. It is also clear that, historically, the Legislature intended to hold a local unit of government responsible for such a discharge regardless of whether the governmental unit itself caused the discharge or whether the discharge was caused by "inhabitants or persons occupying lands from which" the raw sewage originated.

Former MCL 323.1 *et seq.* was repealed by 1994 PA 451. In its place, 1994 PA 451 enacted NREPA, which includes MCL 324.3109. We conclude that, when read as a whole, MCL 324.3109 continues the historical obligations of MCL 323.6 that allow local units of government to be held responsible for the discharge of raw sewage that originates within their borders into state waters, even when the raw sewage is discharged by a private party and not directly discharged by the local unit itself.[26]

---

[26] This conclusion is limited to our interpretation of NREPA. We do not decide whether the Headlee Amendment, specifically Const 1963, art 9, § 29, precludes the state from holding a local unit of government responsible for such a discharge. See note 4 of this opinion.

13

First, like former MCL 323.6(a), MCL 324.3109(1) prohibits a governmental entity itself from discharging injurious substances into state waters. If we were to adopt the Court of Appeals majority's holding that a municipality is responsible under MCL 324.3109(2) only when the municipality itself causes the discharge, that provision would be rendered virtually meaningless. The Court of Appeals majority failed to take into consideration that under MCL 324.3109(1), a person violates part 31 of NREPA by discharging a substance into state waters that is or may become injurious to the interests listed in MCL 324.3109(1)(a) through (e)[27] and, thus, if a municipality itself causes such a discharge, it will have violated subsection (1). However, the Court of Appeals also held that under subsection (2) of MCL 324.3109, a municipality violates NREPA if the municipality itself causes the discharge. Accordingly, the Court of Appeals interpreted subsection (2) as providing little more than what is already provided in subsection (1). Though the Court of Appeals majority's interpretation does not render subsection (2) entirely nugatory, it comes close. We therefore reject the Court of Appeals majority's interpretation because the language of subsection (2) must be given full effect.

Second, when reading MCL 324.3109 as a whole, the language in subsections (4) and (5) form a common theme, along with subsection (2), by listing specific substances that, when discharged, create a presumption that part 31 has been violated. As noted, MCL 324.3109(1) provides that a violation occurs when a substance that is or may

_____

[27] The interest that is implicated in this case is "the public health, safety, or welfare." MCL 324.3109(1)(a).

14

become injurious is discharged into state waters. The language at issue in MCL 324.3109(2) provides that "[t]he discharge of any raw sewage . . . into any of the waters of the state shall be considered prima facie evidence of a violation of this part . . . ." Likewise, MCL 324.3109(4) provides that "the discharge into the waters of this state of any medical waste . . . is prima facie evidence of a violation of this part . . . ." Additionally, MCL 324.3109(5) provides that "the discharge into the waters of this state from an oceangoing vessel of any ballast water is prima facie evidence of a violation of this part . . . ."

Thus, subsections (2), (4), and (5) all provide specific substances that, when discharged, provide prima facie evidence that a violation has occurred. In other words, the listed substances are presumed to be injurious when discharged. As a result of these subsections, raw sewage, medical waste, and ballast water from oceangoing vessels are presumptively injurious to the interests enumerated in MCL 324.3109(1)(a) through (e). In order to rebut that presumption, the responsible entity must demonstrate that the discharge of one or more of those substances is not, or will not become, injurious to the interests enumerated in MCL 324.3109(1)(a) through (e).[28]

---

[28] The plain language of MCL 324.3109(2) is consistent with the plain language of former MCL 323.6(b). As the trial court correctly noted:

> [H]ad the legislature wanted to impose a different scheme of liability, it could have said that the discharge of raw . . . sewage of human origin . . . is prima facie evidence of a violation by the municipality that directly discharges it . . . . They said: "By the municipality in which it originates." Their language adds to the clear intent. When you look at the possibility of what they could have said, it lends further credence to [sic]

15

Moreover, while all three subsections identify presumptively injurious substances, only MCL 324.3109(2) goes further and identifies the party that will be held responsible for a discharge of such a substance. Subsections (4) and (5) refer to the "responsible" party, but do not identify who the responsible party is. Subsection (4) states in pertinent part:

> [T]he discharge into the waters of this state of any medical waste . . . is prima facie evidence of a violation of this part and subjects the *responsible person* to the penalties prescribed in [MCL 324.3115]. [MCL 324.3109(4) (emphasis added).]

Subsection (5) states in pertinent part:

> [T]he discharge into the waters of this state from an oceangoing vessel of any ballast water is prima facie evidence of a violation of this part and subjects the *responsible person* to the penalties prescribed in [MCL 324.3115]. [MCL 324.3109(5) (emphasis added).]

Thus, subsections (4) and (5) state that a "responsible person" will be subject to penalties for a discharge, but they do not identify who that party may be. While subsection (2) contains similar language, it goes a step further by actually identifying the party that will be held responsible for a discharge. It states in pertinent part:

> The discharge of any raw sewage of human origin . . . into any of the waters of the state shall be considered prima facie evidence of a violation of this part *by the municipality in which the discharge originated . . . .* [A] *municipality responsible for the discharge* may be subject to the remedies provided in [MCL 324.3115]. [MCL 324.3109(2) (emphasis added).]

---

the clear intent here is to impose liability on the municipality where the discharge originated.

Thus, not only does MCL 324.3109(2) create a presumption that the discharge of any raw sewage is injurious, it actually identifies the party responsible for the discharge as the municipality in which the discharge originated.

Additionally, we disagree with the decision of the Court of Appeals majority because it conflicts with MCL 324.3109(3), which provides:

> Notwithstanding subsection (2), a municipality is not responsible or subject to the remedies provided in [MCL 324.3115] for an unauthorized discharge from a sewerage system as defined in [MCL 324.4101] that is permitted under this part and owned by a party other than the municipality, unless the municipality has accepted responsibility in writing for the sewerage system and, with respect to the civil fine and penalty under [MCL 324.3115], the municipality has been notified in writing by the [DEQ] of its responsibility for the sewerage system.

The Court of Appeals majority reasoned that MCL 324.3109(3) further buttressed its holding that the municipality must have actually caused the discharge. The majority stated:

> The argument that the municipality must actually cause the discharge is further buttressed by a third factor. MCL 324.3109(3) explicitly states that a municipality is not responsible for a discharge from a sewerage system that is not operated [sic: owned] by the municipality unless the municipality has accepted responsibility in writing for the sewerage system. If the purpose of [MCL 324.3109(2)] were to impose liability on a municipality merely because a discharge occurred within its boundaries, then subsection (3) would be contradictory. [*Worth Twp*, 289 Mich App at 420.]

We disagree because the Court of Appeals' reasoning ignores important language within subsection (3). The first phrase of subsection (3), "[n]otwithstanding subsection (2)," indicates that it is an exception to subsection (2). Thus, the language of subsection (3) creates an *exception* to subsection (2) under which a municipality will not be responsible

17

for a discharge originating within the municipality's boundaries. The exception is that a municipality will not be responsible for a discharge from a *sewerage system* that the municipality does not own.[29] "Sewerage system" is a statutorily defined term that does not include private septic systems.[30] There is no sewerage system in Worth Township, and, as a result, the exception contained in MCL 324.3109(3) is inapplicable to the facts of this case. The Court of Appeals' reliance on MCL 324.3109(3) as support for its holding was misplaced.[31]

Accordingly, when reading the subsections of MCL 324.3109 as a whole, we interpret subsection (2) as placing responsibility for a discharge of raw sewage on the municipality in which the discharge originated and as giving that municipality the burden of showing that the discharged raw sewage does not rise to the "is or may become injurious" standard in order to avoid being subject to the remedies contained in MCL 324.3115. It is clear that by enacting MCL 324.3109(2), the Legislature intended to leave intact the historical obligations of a municipality under former MCL 323.6. The purpose

---

[29] Specifically, the exception is that a municipality will not be held responsible for a sewerage system that it does not own "unless the municipality has accepted responsibility in writing for the sewerage system and, with respect to the civil fine and penalty under [MCL 324.3115], the municipality has been notified in writing by the [DEQ] of [the municipality's] responsibility for the sewerage system." MCL 324.3109(3).

[30] MCL 324.4101(h) provides, in pertinent part, that a sewerage system is "a system of pipes and structures . . . *actually used or intended for use by the public* for the purpose of collecting, conveying, transporting, treating, or otherwise handling sanitary sewage . . . ." (Emphasis added.)

[31] Moreover, the fact that the exception in MCL 324.3109(3) exists illustrates that there is a general rule. The general rule contained in MCL 324.3109(2) is that the municipality will be held responsible for a discharge unless an exception applies.

18

of MCL 324.3109(2) is to allow a municipality to be held responsible for any discharges of raw sewage from within its boundaries into state waters.[32]  By holding otherwise, the Court of Appeals frustrated that purpose.

Furthermore, the Court of Appeals majority erroneously concluded that Worth Township could not be held responsible as a "municipality" under MCL 324.3109 because the state and townships are municipalities under part 31 and the state has just as much responsibility as a township to remedy the discharge of raw sewage.[33]  The Court of Appeals stated:

> For purposes of part 31 of NREPA, MCL 324.3101(m) supplies a particular definition of "municipality": "this state, a county, city, village, or township, or an agency or instrumentality of any of these entities."  Thus, the state is as much a municipality as is [Worth Township].  And, by extension, the state bears as much responsibility for the unauthorized discharges at issue in this case as does [Worth Township].  And the state is as liable to the remedies of [MCL 324.3115] as is [Worth Township].  Thus, even if we were to agree with [the DEQ] that MCL 324.3109(2) imposes on a "municipality" the responsibility of installing a sanitary-sewerage system to abate a problem with the discharge of raw sewage, [the DEQ] offer[s] no compelling reason why [it] should be permitted to shift [its] own responsibility to install a sanitary sewer onto [Worth Township]. [*Worth Twp*, 289 Mich App at 422-423.]

Thus, the Court of Appeals reasoned that it would be incorrect to assume that the Legislature intended to allow the state to shift its own responsibility to a municipality

---

[32] This responsibility is, as noted, subject to the exception contained in MCL 324.3109(3).

[33] In MCL 324.3101(m), "municipality" is defined as "this state, a county, city, village, or township, or an agency or instrumentality of any of these entities."

19

such as a township by seeking to enforce an injunction against a township under MCL 324.3109(2) and MCL 324.3115. We disagree.

While it is correct to say that a discharge occurring in a township also "occurs" within the county and state within which the township is located, we disagree with the Court of Appeals' conclusion that this fact relieves a township of responsibility under NREPA. A township is within NREPA's definition of municipality, and it therefore can be held responsible as a municipality under MCL 324.3109(2).[34] Moreover, we disagree with the Court of Appeals' conclusion because it overrides the intent of the Legislature by concluding that *no municipalities can be held responsible* simply because several municipalities are responsible under MCL 324.3109(2). This conclusion would always preclude relief under MCL 324.3109(2) because every square inch of Michigan is layered by at least several of the types of entities listed in the definition of "municipality." Such a result is not what the Legislature intended.

Additionally, we note that the most localized form of government involved, such as a township, has the authority to prevent the discharge of raw sewage. Historically, townships have been responsible for overseeing the disposal of sewage generated within

---

[34] As the Court of Appeals noted, the Legislature could have used the term "local unit" instead of "municipality" to ensure that only local governments are held responsible. *Worth Twp*, 289 Mich App at 423. "Local unit" is defined as "a county, city, village, or township or an agency or instrumentality of any of these entities." MCL 324.3101(*l*). However, the Legislature's reference to a "municipality" in MCL 324.3109(2) does not mean that the "local units" included in the definition of "municipality" can avoid responsibility for a discharge within their borders. The definition of "municipality" encompasses local units and, therefore, local units can be held responsible.

20

the township.[35]  Under the Township and Village Public Improvement and Public Service Act, MCL 41.411 *et seq*., a township has the power to finance, construct, and maintain a sewerage system.  MCL 41.411(1).[36]  A township also has the power to condemn individual properties that are injurious to public health,[37] and a township has the authority to grant franchises to public utilities within its boundaries.[38]  Moreover, townships have the authority to adopt ordinances regulating public health, safety, and welfare, including ordinances that require individual property owners to hook up to a sewerage system.[39] There is simply no reason why a township, as a "municipality," cannot be deemed a responsible entity under the language of MCL 324.3109(2) when a discharge occurs within its borders.[40]  The Court of Appeals majority erred by concluding otherwise.

---

[35] See former MCL 323.6(b).

[36] Part 43 of NREPA also grants townships, as local units of government, the authority to construct, operate, and maintain sewers.  See MCL 324.4301 *et seq*.

[37] MCL 41.411(3) grants townships condemnation powers and authorizes them to use the condemnation provisions applicable to state agencies and public corporations in MCL 213.21 through 213.25.  MCL 213.23 authorizes the taking of private property for "public purposes."  This Court has stated that a "public purpose" promotes "*public health*, safety, morals, general welfare, security, prosperity, and contentment of all the inhabitants or residents within the municipal corporation . . . ."  *Gregory Marina, Inc v Detroit*, 378 Mich 364, 396; 144 NW2d 503 (1966) (opinion by T. M. KAVANAGH, C.J.) (emphasis added; citation and quotation marks omitted).

[38] See Const 1963, art 7, § 19.

[39] See MCL 41.181, MCL 333.12753(1); see also MCL 324.4301 *et seq*.

[40] There may be instances in which the responsibility for a discharge could logically be placed with one of the other entities listed as a municipality, such as the state.  In such instances, it is possible that the DEQ may choose to initiate a suit against that municipality.  MCL 324.3115(1) provides that the DEQ "may request the attorney

21

Finally, as noted, we hold that the trial court's decision requiring Worth Township to take necessary corrective action to prevent the discharge was within the court's jurisdiction under part 31 of NREPA. MCL 324.3115(1) grants the trial court jurisdiction "to restrain the violation and to require compliance" with part 31. Although the trial court specifically stated that it was not requiring Worth Township to construct a sewerage system in this case, it appears that the parties agree that the most practical and comprehensive method to restrain the discharge is for a sewerage system to be constructed. In fact, in the 2004 district compliance agreement, Worth Township agreed to construct the necessary sewerage system, although the township did not ultimately construct that system.

We note, however, that a sewerage system is not the only method available to remedy a widespread discharge. As mentioned earlier, properties that produce discharge could be condemned. Another option would be to institute a pump-and-treat program requiring individual properties' septic systems to be pumped and the contents treated off-site. MCL 324.3115(1) only requires that the method chosen restrain the violation and

---

general to commence a civil action for appropriate relief . . . for a violation of [part 31 of NREPA] . . . ." This language implicitly grants the DEQ the discretion to choose the appropriate parties to hold responsible under part 31. In a suit brought under MCL 324.3109(2), the only limitation on the *type* of party that may be sued is that the party must be a "municipality."

comply with the provisions of part 31 of NREPA. The trial court's injunction in this case met those requirements.[41]

In sum, we conclude that under MCL 324.3109(2), a municipality can be held responsible for preventing a discharge of raw sewage that originates within its borders, even when the raw sewage is discharged by a private party and not directly discharged by the municipality itself. Additionally, we hold that a township, as a municipality, can be held responsible for such a discharge. Accordingly, we agree with the Court of Appeals dissent that the trial court correctly interpreted MCL 324.3109(2) by granting an injunction requiring Worth Township to take necessary measures to stop the discharge of the raw sewage emanating from private septic systems within its borders. Therefore, we reverse the judgment of the Court of Appeals.[42]

## IV. RESPONSE TO THE DISSENT

The dissent argues that MCL 324.3109(2) establishes a presumption only that a municipality caused a discharge and that the municipality can rebut the presumption and avoid responsibility by showing that the municipality itself did not cause the discharge. We have considered these arguments, and we respectfully disagree.

---

[41] This holding does not apply to the schedule, fine, and attorney fees included in the trial court's decision.

[42] The Court of Appeals did not rule on Worth Township's remaining arguments that the remedial action ordered by the trial court violated the Headlee Amendment, specifically Const 1963, art 9, § 29, and that MCL 324.3115(1) does not authorize the trial court's order imposing a schedule for implementing corrective action, a fine, and an attorney-fee award. Accordingly, we remand this matter to the Court of Appeals for a decision on those significant issues to determine the outcome of this case.

First, the dissent asserts that the language "by the municipality" in subsection (2) supports the argument that, when a discharge is determined to have been committed by a party other than the municipality itself, the presumption of municipal liability has been rebutted. However, the actual "discharge" itself constitutes the subject of the first clause of the first sentence of subsection (2) and is not modified by the language "by the municipality." Rather, "by the municipality" modifies "prima facie evidence of a violation of this part." Thus, a discharge under subsection (2) constitutes "prima facie evidence of a violation of this part" by the municipality. It is the "violation" that is attributed to the municipality, not the discharge.

Moreover, any municipality that *actually* discharges an injurious substance is already in violation of subsection (1). If the dissent's interpretation were correct, then subsection (2) would operate solely to create a *presumption* of liability, and only in cases in which human sewage constitutes the discharged substance. Accordingly, under the dissent's interpretation, when there has been a discharge of human sewage, there is a rebuttable presumption that the municipality in which the discharge originated was the discharging party. Though the dissent's interpretation does not render subsection (2) entirely nugatory, it comes close. Our interpretation, on the other hand, provides full effect to the language in MCL 324.3109.

Second, the dissent contends that subsection (3) provides the one situation in which a municipality can avoid a presumption of causation under subsection (2): when the discharge is caused by a sewerage system not owned by the municipality. However, evidence that a discharge was caused by another party's sewerage system would itself be

sufficient to rebut the subsection (2) presumption under the dissent's reasoning because it shows that a party other than the municipality actually caused the discharge. Thus, the same evidence required to invoke the exception of subsection (3) would also seemingly rebut the dissent's interpretation of the presumption contained in subsection (2). That is, if the dissent is correct that evidence that a party other than the municipality caused the discharge rebuts the subsection (2) presumption, it would be entirely unnecessary for subsection (3) to provide that the subsection (2) presumption does not arise if the discharge is caused by a sewerage system not owned by the municipality.

We respectfully disagree with the dissent's interpretation. Under our holding, the actual cause of the discharge is irrelevant under subsection (2). Subsection (3) is not superfluous because it creates a single circumstance in which the *actual* cause of the discharge is relevant—when the discharge is caused by a sewerage system not owned by the municipality.

Finally, with regard to the dissent's hypothetical situation concerning a portable-toilet company engaging in the systematic discharge of waste into state waters, we emphasize our holding that a municipality deemed responsible under subsection (2) is only required to restrain a violation and comply with the provisions of part 31 of NREPA. When there is a single property owner actively causing a discharge in violation of MCL 324.3109(1) and the obvious solution is for the owner to stop the discharge, a municipality has options available to accomplish this. These options could include, but are not limited to, passing ordinances, fining the property owner, or obtaining a court

order enjoining the discharge. Thus, we disagree with the dissent's characterization of our holding as "an extraordinary measure." *Post* at 14.

Accordingly, we are not persuaded by the arguments raised by the dissenting opinion.

## V.  CONCLUSION

We conclude that under NREPA, a municipality can be held responsible for, and required to prevent, a discharge of raw sewage that originates within its borders, even when the raw sewage is discharged by a private party and not directly discharged by the municipality itself. Therefore, we reverse the judgment of the Court of Appeals because it interpreted MCL 324.3109(2) in a manner that precludes a municipality from being held responsible for such discharge. Further, we remand this case to the Court of Appeals to address Worth Township's remaining arguments on appeal.

> Diane M. Hathaway
> Michael F. Cavanagh
> Marilyn Kelly
> Stephen J. Markman
> Mary Beth Kelly
> Brian K. Zahra

STATE OF MICHIGAN

SUPREME COURT

DEPARTMENT OF ENVIRONMENTAL
QUALITY and DIRECTOR OF THE
DEPARTMENT OF ENVIRONMENTAL
QUALITY,

        Plaintiffs-Appellants,

v                                     No. 141810

WORTH TOWNSHIP,

        Defendant-Appellee.

_____

YOUNG, C.J. (*dissenting*).

I respectfully dissent from the majority's interpretation of MCL 324.3109(2). MCL 324.3109(2) prohibits the discharge of raw human sewage into state waters and states that such a discharge "shall be considered prima facie evidence of a violation of this part by the municipality in which the discharge originated . . . ." The majority interprets MCL 324.3109(2) to mean that a municipality is presumed responsible for a discharge of raw human sewage that originated within its borders, that the municipality may *only* rebut the presumption of liability by showing that the discharge of raw human sewage was not injurious, and that the municipality may *not* rebut the presumption of liability by showing that it did not cause the discharge. The majority's decision thus imposes *strict liability* on a municipality for every injurious or potentially injurious discharge of raw human sewage that originates within its borders, even if the

municipality can conclusively establish that some other entity caused the pollutant discharge.

Therefore, I respectfully dissent and would conclude that the statutory presumption contained in MCL 324.3109(2) may be rebutted when a municipality shows either that the discharge of raw human sewage did not violate part 31 of the Natural Resources and Environmental Protection Act (NREPA), MCL 324.3101 *et seq*., *or* that it was not in fact the discharging party. Because the documentary evidence from the Department of Environmental Quality (DEQ) indicates that Worth Township is not the *actual* source of the environmental contamination, and the DEQ in fact *concedes* that defendant would prevail if permitted to rebut causation, I believe that defendant is entitled to summary disposition of the claim brought under MCL 324.3109(2).

## I. ANALYSIS

MCL 324.3109(2) contains a presumption that provides a basis for holding municipalities liable for discharges of raw human sewage:

> The discharge of any raw sewage of human origin, directly or indirectly, into any waters of the state shall be considered prima facie evidence of a violation of this part by the municipality in which the discharge originated . . . .

"'*Prima facie* evidence is such as in the judgment of the law is sufficient to establish the fact, and, if unrebutted, remains sufficient for that purpose.'"[1]  Therefore, if there has

---

[1] *People v Licavoli*, 264 Mich 643, 653; 250 NW 520 (1933), quoting *Atlantic Land & Improvement Co v Lee*, 93 Fla 579, 584; 112 So 549 (1927).  Likewise, Black's Law Dictionary defines "prima facie evidence" as "[e]vidence that will establish a fact or sustain a judgment unless contradictory evidence is produced."  Black's Law Dictionary (9th ed), pp 638-639.

been a discharge of raw human sewage into state waters, then the municipality in which

the discharge originated is presumed to have violated part 31 of NREPA. The question

then becomes: How can a municipality rebut that presumption?

A party can rebut a presumption by introducing evidence that refutes the

supporting facts or the presumed facts.[2] The majority concludes that the only way a

municipality can rebut the statutory presumption is by "showing that the discharged raw

sewage does not rise to the 'is or may become injurious' standard" set forth in MCL

324.3109(1), thereby proving that no "violation" of MCL 324.3109(1) actually occurred.[3]

---

[2] See MRE 301:

> In all civil actions and proceedings not otherwise provided for by
> statute or by these rules, a presumption imposes on the party against whom
> it is directed the burden of going forward with evidence to rebut or meet the
> presumption, but does not shift to such party the burden of proof in the
> sense of the risk of nonpersuasion, which remains throughout the trial upon
> the party on whom it was originally cast.

See also *Reed v Breton*, 475 Mich 531, 539; 718 NW2d 770 (2006) (recognizing that
MRE 301 sets forth the general rule regarding presumptions and that "the usual standard
required to overcome a rebuttable presumption [is] competent and credible evidence");
*P R Post Corp v Maryland Cas Co*, 403 Mich 543, 552; 271 NW2d 521 (1978) (stating
that "[t]he legal effect of the admission of prima facie evidence is to shift the burden of
proceeding to the party calling the evidence into question," who must then "come
forward with evidence to rebut or contradict its liability . . . ."); *Licavoli*, 264 Mich at 653
("'*Prima facie* evidence is such as in the judgment of the law is sufficient to establish the
fact, and, *if unrebutted*, remains sufficient for that purpose.'"), quoting *Lee*, 93 Fla at 584
(emphasis added).

[3] *Ante* at 18. The majority's brief discussion of how a municipality can rebut the
presumption demonstrates that it assumes that failure to comply with MCL 324.3109(1)
is the only way a municipality can violate part 31. However, a municipality can violate
part 31 in multiple ways. For example, MCL 324.3112 prohibits municipalities from
discharging waste effluent without a permit. Therefore, the method by which a
municipality can show that there has not been a violation of part 31 in order to refute the

3

However, MCL 324.3109(2) does not merely presume there has been "a violation of this part." Rather, MCL 324.3109(2) unambiguously presumes there has been "a violation of this part *by the municipality*."[4]

When used as a preposition, the word "by" means "through the agency of" and "as a result or on the basis of[.]"[5] Accordingly, MCL 324.3109(2) presumes that the "violation of this part" occurred *as a result of or through the agency of the municipality*. This presumption assumes that some action "by the municipality" *caused* or *contributed to* the violation. Therefore, under the plain language of MCL 324.3109(2), a municipality may rebut the presumption in one of two ways: it can show either that no violation of part 31 occurred *or* that the violation occurred, but not as a result of or through the agency of the municipality.

## II. THE MAJORITY'S INTERPRETATION OF MCL 324.3109 IS FLAWED

In concluding that a municipality may only rebut the presumption of liability by showing that no violation occurred, the majority's interpretation of MCL 324.3109(2) severs the phrase "by the municipality" from the phrases "of a violation" and "of this part." However, the phrase "by the municipality" *modifies* "of this part," which in turn modifies "of a violation." Each subsequent prepositional phrase gives meaning to the preceding phrase, and they cannot be read independently of each other. Thus, the

---

presumption of its liability should depend on the DEQ's underlying theory of liability. The majority opinion does not seem to recognize this fact.

[4] Emphasis added.

[5] *Random House Webster's College Dictionary* (2000), defs 10 and 12.

4

majority errs by concluding that "of this part" is part of the presumption while "by the municipality" is not.

The majority attempts to find meaning in "the surrounding subsections and in the historical context of statutes governing raw-sewage disposal" to support its conclusion that "the municipality is in violation of NREPA when a discharge originates within its boundaries, irrespective of who actually caused the discharge."[6]  What is noticeably absent from the majority's analysis, however, is an in-depth evaluation of the *actual* language of MCL 324.3109(2).

The majority dutifully notes that "[t]he words used in the statute are the most reliable indicator of the Legislature's intent and should be interpreted on the basis of their ordinary meaning"[7] and that "the statutory language must be read and understood in its grammatical context."[8]  While the majority recites these canons of statutory interpretation, it fails to follow them.  Rather than focusing on the plain language of MCL 324.3109(2) in its present form, the majority begins its analysis by looking at antecedent versions of the statute that required "municipalit[ies] to oversee the proper disposal of sewage within [their] boundaries . . . ."[9]  As the majority implicitly recognizes by citing cases holding that the *current* language of a statute is the most reliable indicator of a

---

[6] *Ante* at 12.

[7] *Ante* at 9.

[8] *Ante* at 9.

[9] *Ante* at 12.

5

Legislature's intent, importing the historical obligations of *prior* versions of a statute is completely inappropriate when the statutory language is clear and unambiguous.[10]

Moreover, even if the language of a prior statute were a proper indication of the meaning of the *current* version of an unambiguous statute, the prior version of MCL 324.3109(2) undercuts the majority's analysis. Former MCL 323.6, as amended by 1965 PA 328, provided in part:

> (a) It shall be unlawful for any person directly or indirectly to discharge into the waters of the state any substance which is or may become injurious to the public health, safety, or welfare . . . .
>
> (b) The discharge of any raw sewage of human origin, directly or indirectly into any of the waters of the state shall be considered prima facie evidence of the violation of [former MCL 323.6(a)] unless said discharge shall have been permitted by an order, rule, or regulation of the commission. *Any city, village or township which permits, allows or suffers the discharge of such raw sewage of human origin into any of the waters of the state by any of its inhabitants or persons occupying lands from which said raw sewage originates, shall be subject only to the remedies provided for in* [*former MCL 323.7*].[11]

Former MCL 323.6(b) had two sentences. The first sentence created a presumption that a discharge of raw human sewage violated former MCL 323.6(a). Most significantly here, the second sentence patently imposed liability on municipalities when they merely

---

[10] See *People v Gardner*, 482 Mich 41, 65-66; 753 NW2d 78 (2008) (holding that when interpreting a statute, courts should look to the "statute's plain language" and that "to whatever extent courts correctly divined past legislatures' intents using previously enacted language, those intents should not guide our interpretation of the *unambiguous* language of the current versions of the statutes; the acts of past legislatures do not bind the power of successive legislatures to enact, amend, or repeal legislation"), citing *Studier v Mich Pub Sch Employees' Retirement Bd*, 472 Mich 642, 660; 698 NW2d 350 (2005).

[11] Emphasis added.

6

allowed or suffered others within their borders to discharge injurious human sewage into state waters.

When the statute was repealed and recodified in NREPA in 1994,[12] the Legislature *removed* the sentence that explicitly imposed liability on the municipalities for the actions of others *and incorporated it into the rebuttable presumption.* In doing so, the Legislature created a scheme in which discharges of raw human sewage are presumed to violate part 31 *and* be caused by the municipalities in which the discharges occurred. The prior language imposing liability on municipalities is no longer absolute in the current statute; the language that imposed absolute municipal liability in the previous statute has been incorporated into the rebuttable presumption provision of the current statute. *Thus, the amended statutory language provides further support for the conclusion that the Legislature abolished municipal liability for merely tolerating the injurious discharges of others and replaced it with a rebuttable presumption of liability regarding causation.* The majority opinion ignores not only the actual language of the current statute but also how it retreated from its predecessor's imposition of strict liability for simply being the locus of a discharge. Both are indications that the majority fails to give the meaning the Legislature intended by its choice of language, especially given that it retreated from language imposing absolute liability in a prior version of the statute.

The majority also errs in its contextual analysis of MCL 324.3109(2). While understanding MCL 324.3109(2) in the context of the other subsections is beneficial and

---

[12] MCL 324.90101(1).

7

appropriate,[13] the majority's evaluation of the various subsections is detached from their plain meaning. The majority concludes that if "a municipality is responsible under MCL 324.3109(2) only when the municipality itself causes the discharge, that provision would be rendered virtually meaningless" because it would provide "little more than what is already provided in [MCL 324.3109(1)]."[14]

The majority fails to appreciate the evidentiary significance of a presumption. MCL 324.3109(1) prohibits a person from directly or indirectly discharging an injurious substance into state waters. MCL 324.3109(2) presumes that human sewage is injurious and that its discharge was caused by the municipality in which the discharge occurred. MCL 324.3109(2), therefore, shifts the evidentiary burden and requires the municipality, *rather than the DEQ*, to prove that the discharge was either not violative of part 31 or not caused by the municipality. While the statutory presumption requires the municipality to refute it in order to avoid the penalties and remedies articulated in MCL 324.3115, the general statutory scheme ultimately requires the DEQ to hold the *actual polluters* liable. This distinction appears to be deliberate, given that the DEQ is in a superior position to prosecute individual polluters.[15]

---

[13] See *Macomb Co Prosecutor v Murphy*, 464 Mich 149, 159-160; 627 NW2d 247 (2001).

[14] *Ante* at 14.

[15] As seen in this case, the DEQ employs personnel capable of investigating pollutant discharges. Moreover, the DEQ has the statutory authority to request the Attorney General to commence a civil action to enforce part 31. MCL 324.3115(1).

The majority also claims that MCL 324.3109(4)[16] and (5)[17] support its interpretation of MCL 324.3109(2). MCL 324.3109(4) and (5) presume that discharges of medical waste and ballast water into state waters are violations of part 31. The majority observes:

> [MCL 324.3109(4) and (5)] state that a "responsible person" will be subject to penalties for a discharge, but they do not identify who that party may be. While [MCL 324.3109(2)] contains similar language, it goes a step further by actually identifying the party that will be held responsible for a discharge.[18]

On the basis of this observation, the majority abruptly concludes that the presumptive identification of the responsible party in MCL 324.3109(2) is not rebuttable. The majority reaches this conclusion by assuming that the only material difference between these subsections is the fact that MCL 324.3109(2) identifies who is responsible for the discharges, while MCL 324.3109(4) and (5) imply that the person who actually caused

---

[16] MCL 324.3109(4) provides:

> Unless authorized by a permit, order, or rule of the [DEQ], the discharge into the waters of this state of any medical waste, as defined in part 138 of the public health code, 1978 PA 368, MCL 333.13801 to 333.13831, *is prima facie evidence of a violation of this part and subjects the responsible person to the penalties prescribed in* [*MCL 324.3115*]. [Emphasis added.]

[17] MCL 324.3109(5) provides:

> Beginning January 1, 2007, unless a discharge is authorized by a permit, order, or rule of the [DEQ], the discharge into the waters of this state from an oceangoing vessel of any ballast water *is prima facie evidence of a violation of this part and subjects the responsible person to the penalties prescribed in* [*MCL 324.3115*]. [Emphasis added.]

[18] *Ante* at 16.

9

the discharge is responsible. In doing so, the majority seems to import the grammatical structure of MCL 324.3109(4) and (5) into MCL 324.3109(2) and thereby interpret MCL 324.3109(2) *as if it read*:

> The discharge of any raw sewage of human origin, directly or indirectly, into any of the waters of the state shall be considered prima facie evidence of a violation of this part *and subjects the municipality in which the discharge originated to penalties as prescribed in MCL 324.3115.*

In fact, the phrase "by the municipality" in MCL 324.3109(2) modifies "prima facie evidence of a violation of this part." Accordingly, *the phrase "by the municipality" is part of the presumed fact and is subject to rebuttal by production of contradictory evidence.* It is the majority's failure to recognize this critical grammatical fact that renders its construction fatally flawed.

MCL 324.3109(3) lends additional support to the conclusion that causation is incorporated into the rebuttable presumption. MCL 324.3109(3) provides:

> Notwithstanding subsection (2), a municipality is not responsible or subject to the remedies provided in [MCL 324.3115] for an unauthorized discharge from a sewerage system as defined in [MCL 324.4101] that is permitted under this part and owned by a party other than the municipality, *unless* the municipality has accepted responsibility in writing for the sewerage system and, with respect to the civil fine and penalty under [MCL 324.3115], the municipality has been notified in writing by the [DEQ] of its responsibility for the sewerage system.[19]

MCL 324.3109(3) creates an exception to MCL 324.3109(2). In situations in which there has been an unauthorized discharge from a certain type of sewer within a municipality, the municipality is liable if it agreed to be responsible for the system, *even if the*

---

[19] Emphasis added.

10

*municipality can establish that it did not cause the discharge.* Moreover, the municipality is subject to the civil fines and penalties enumerated in MCL 324.3115 if it received proper notice from the DEQ. If MCL 324.3109(3) did not exist, a discharge from the sewer system would "be considered prima facie evidence of a violation of this part by the municipality in which the discharge originated" pursuant to MCL 324.3109(2) and the municipality could rebut its presumed liability by showing that it did not cause the discharge.

The Court of Appeals held that MCL 324.3109(2) "merely creates the presumption that . . . a discharge [of raw human sewage] originated with the municipality."[20] The Court of Appeals held that a municipality could rebut this presumption by showing that the municipality did not cause the discharge. The Court of Appeals reasoned that "[i]f the purpose of subsection (2) were to impose liability on a municipality merely because a discharge occurred within its boundaries, then subsection (3) would be contradictory."[21]

In critiquing the Court of Appeals' analysis, the majority states that MCL 324.3109(3) "creates an *exception* to subsection (2) under which a municipality will not be responsible for a discharge originating within the municipality's boundaries. The exception is that a municipality will not be responsible for a discharge from a *sewerage system* that the municipality does not own."[22] The majority reasons that because there is

---

[20] *Dep't of Environmental Quality v Worth Twp*, 289 Mich App at 414, 424; 808 NW2d 260 (2010).

[21] *Id.* at 420.

[22] *Ante* at 17-18.

11

no sewerage system in Worth Township, MCL 324.3109(3) is inapplicable and the Court of Appeals should not have relied on it.

The problem with the majority's analysis is that it ignores the second half of MCL 324.3109(3).[23] The majority seems to assume that the sole purpose of MCL 324.3109(3) is to create one specific circumstance in which the presumption does *not* arise: when the discharge is caused by a private sewer. If the second half of MCL 324.3109(3) did not exist, I would agree with the majority. This, obviously, is not the case. The second half of MCL 324.3109(3) imposes liability on the municipality for a discharge it did not cause—but *only* if it has accepted responsibility in writing and been notified of its responsibility.

A brief illustration may clarify my interpretation of MCL 324.3109(3). Suppose a private entity owns a sewerage system as defined in MCL 324.4101 and there is an unauthorized discharge from that system. If the discharge was of raw human sewage, the municipality in which the discharge occurred is presumed liable under MCL 324.3109(2). However, the municipality could rebut this presumption and avoid liability by showing that it did not cause the discharge. In the absence of MCL 324.3109(3), this would be the end of the matter for the municipality. However, MCL 324.3109(3) continues to impose liability on the municipality *notwithstanding* its ability to rebut the presumption of MCL 324.3109(2) if the municipality had accepted responsibility in writing for the sewerage system and been notified in writing by the DEQ of its responsibility. Therefore,

---

[23] For purposes of this discussion, I refer to everything before "unless the municipality has accepted responsibility" as the first half of MCL 324.3109(3) and everything from that phrase on as the second half of MCL 324.3109(3).

12

interpreting MCL 324.3109(2) to mean that a municipality can rebut the presumption created by that subsection by showing that the discharge was not injurious or that it was not the actual discharging party is perfectly consistent with MCL 324.3109(3), and the majority errs by concluding otherwise.

In its response to this opinion, the majority recognizes:

> [T]he actual "discharge" itself constitutes the subject of the first clause of the first sentence of [MCL 324.3109(2)] and is not modified by the language "by the municipality." Rather, "by the municipality" modifies "prima facie evidence of a violation of this part." Thus, a discharge under subsection (2) constitutes "prima facie evidence of a violation of this part" by the municipality. It is the "violation" that is attributed to the municipality, not the discharge.[24]

This analysis renders the majority's position internally inconsistent. The majority seems to imply that "by the municipality" is not part of the rebuttable presumption *because* that phrase does not modify "discharge." However, if the majority's implication were correct, then "of a violation" would *also* not be part of the presumption because that phrase, like "by the municipality," modifies "prima facie evidence" and not "discharge." This cannot be.

The presumption takes effect *whenever* there is a "discharge of any raw sewage of human origin" and shifts the evidentiary burden to the municipality. The dispute between the majority and this dissent is not whether "by the municipality" modifies "discharge," but whether the word "by" means that its object—"the municipality"—actually *caused* its antecedent—"a violation." As explained earlier, the ordinary meaning of the word "by"

---

[24] *Ante* at 24.

contains this causal requirement: "through the agency of" and "as a result or on the basis of[.]"[25]  If the municipality fails to rebut the presumption that it caused the discharge, then I agree with the majority that the "'violation' . . . is attributed to the municipality . . . ."[26]  However, because the majority would *always* subject the municipality to liability for an injurious discharge, *even when the municipality proves that it did not cause the violation*, it is the majority's interpretation that fails to take full account of the meaning of the word "by" and its causal meaning in relation to the evidentiary presumption.

## III.  CONSEQUENCES OF THE MAJORITY'S INTERPRETATION OF MCL 324.3109

The majority's interpretation of MCL 324.3109(2) renders a municipality strictly liable for the actions of others, even if the municipality has proffered evidence that conclusively establishes the identity of the polluter.  Holding a municipality strictly liable for the actions of others is an extraordinary measure, especially when strict liability is not expressly provided by the language of the statute.

One example will suffice to show the broad implications of the majority's interpretation.  Suppose that a portable toilet company regularly, but surreptitiously, dumps its collected human waste into state waters within a township and the township can conclusively establish that the company, and not the township, caused the discharges.  Under the majority's interpretation of MCL 324.3109(2), the township may not avoid

---

[25] *Random House Webster's College Dictionary* (2000), defs 10 and 12.

[26] *Ante* at 24.

liability for the actions of polluters who are under an *independent* statutory obligation to refrain from discharging waste into state waters. Thus, under the majority's interpretation, the underlying municipality is *always* responsible for *every* injurious discharge of human waste into state waters, even though individuals *actually* responsible for the discharges have themselves violated MCL 324.3109(1) and are liable for the penalties provided by law. While the Legislature may be within its authority to enact this dual imposition of liability (as it apparently did in the predecessor version of this statute), there is no indication in the text of MCL 324.3109(2) that it intended to do so merely by imposing a rebuttable presumption that makes it easier for the DEQ to hold *somebody else* responsible for the violation.

The majority concludes that imposing strict liability on municipalities for discharges caused by others is not onerous because "a municipality deemed responsible under [MCL 324.3109(2)] is only required to restrain a violation and comply with the provisions of part 31 of NREPA."[27] Imposing, as the majority opinion does, a requirement that a municipality such as Worth Township stop others from polluting state waters is not inconsequential. While a municipality may have the statutory authority to stop pollutant discharges,[28] a municipality may not readily possess the resources to halt illegal discharges and ensure compliance. Condemnation is not a cost-free remedy, and

---

[27] *Ante* at 25.

[28] As the majority recognizes, townships have the authority to condemn individual properties that are injurious to public health. MCL 41.411(3). Further, townships have the authority to adopt ordinances that regulate the public health, safety, and general welfare. MCL 41.181(1).

15

local ordinances designed to prohibit unlawful discharges may be no more effective than the state law that was obviously violated in this case. Further, MCL 324.3115(1) *requires* the imposition of a "fine of not less than $2,500.00" and gives circuit courts the authority to impose attorney fees and costs when there has been a violation of part 31.[29] Because the majority reads MCL 324.3109(2) as imposing strict liability on the municipality for *any* injurious discharge of human waste into state waters that originates within its borders, the municipality is liable for this mandatory fine even when the municipality ensures *subsequent* compliance with part 31 of NREPA. Thus, the majority's unwarranted expansion of liability to municipalities will subject municipalities to mandatory statutory penalties *even when municipalities take active measures to stop pollutant discharges*.

## IV. CONCLUSION

There is a saying that "[h]e who chooses the beginning of a road chooses the place it leads to. It is the means that determine the end."[30] The majority erroneously chooses to begin its analysis with an examination of the historical context of MCL 324.3109 rather than the plain and unambiguous language of the statute. The majority's analytical approach leads it to conclude that a municipality without a proper permit is liable for every injurious or potentially injurious discharge of raw human sewage that originates within its borders, even when it can be shown that the municipality was not the cause of

---

[29] Indeed, the fine imposed by the circuit court may be up to "$25,000.00 per day of violation" pursuant to MCL 324.3115(1)(a).

[30] Fosdick, *Living Under Tension* (New York: Harper & Brothers, 1941), p 111.

16

the environmental contamination. Accordingly, the majority's interpretation imposes strict liability on municipalities that I believe is unsupported by the text of the statute.

In this case, the DEQ submitted documentary evidence that private residences and commercial buildings in Worth Township were discharging raw human sewage into state waters. Pursuant to MCL 324.3109(2), these discharges were prima facie evidence of a violation of part 31. However, Worth Township challenged the claim that the violation occurred "by the municipality," arguing that the discharges did not occur as a result of its actions, but were caused by the private residences and commercial buildings, as indicated in the DEQ's documentation. In fact, at oral argument, the DEQ's counsel admitted that if Worth Township were permitted to rebut the statutory presumption by showing that the discharges were "caused by failing private septic systems," then Worth Township should prevail. In light of the DEQ's evidence and the Attorney General's concession, I do not believe that a genuine issue of material fact exists regarding whether Worth Township is liable pursuant to MCL 324.3109(2).

Because the majority fails to give meaning to the plain and unambiguous language of MCL 324.3109(2), I dissent. I would reverse the Court of Appeals' decision in part[31] and remand this case to the circuit court to determine whether there is a basis to impose liability under the DEQ's alternative theory of liability pursuant to MCL 324.3112.

Robert P. Young, Jr.

---

[31] While the Court of Appeals correctly held that a municipality could rebut the statutory presumption by showing that it did not cause the discharges, the panel failed to recognize that the presumption could *also* be rebutted by showing that the discharges did not constitute a violation of part 31.